**STATE of North Dakota, Plaintiff and Appellee,**

v.

**Michael Wayne WHALEN, Defendant and Appellant.**

Cr. No. 930360.

Supreme Court of North Dakota.

Aug. 24, 1994.

Brett M. Shasky (argued), Asst. State's Atty., Fargo, for plaintiff and appellee.

Howard Marvin Anderson, Jr. (argued), Fargo, for defendant and appellant.

LEVINE, Justice.

Michael Wayne Whalen appeals from the verdict, an order denying his motion for new trial, and the sentence imposed upon his conviction of reckless endangerment, terrorizing, and carrying a concealed weapon. We affirm.

Shortly before 1:00 a.m. on April 7, 1993, Whalen, Melissa Ness, Kevin Gelinske, Carmen Houglum, and Lori Zepper were in-

volved in an incident in the parking lot of Ness's apartment building in Fargo. Whalen allegedly threatened to shoot Gelinske, fired a handgun at Gelinske, pointed and held a handgun to Ness's neck and collarbone, and waved or pointed a handgun at Houglum's face. The incident ended with the arrival of Fargo police officers.

After a jury trial, Whalen was found guilty of reckless endangerment, terrorizing, and carrying a concealed dangerous weapon. Whalen was sentenced to three years of imprisonment for the reckless endangerment conviction, with the first two years to be served without benefit of parole, under § 12.1–32–02.1, N.D.C.C. Whalen was sentenced to three years of imprisonment for the terrorizing conviction and one year of imprisonment for the concealed weapon conviction. The sentences were ordered to run concurrently.

On appeal, Whalen contends that the trial court erred in admitting prejudicial hearsay evidence and in applying the minimum mandatory sentencing provision of § 12.1–32–02.1, N.D.C.C.

At approximately 1:30 a.m. on April 7, 1993, Ness gave Sergeant Mueller of the Fargo Police Department a written statement about the events that had just occurred. She also made oral statements in response to clarifying questions posed by Sergeant Mueller. At trial, Ness repudiated much of what she had said in her oral and written statements at the scene of the incident. Ness testified that she had lied and exaggerated matters in her original statements because she was angry and upset with Whalen and wanted to get him into trouble because she had learned that Whalen had been unfaithful to her while they were dating. Ness also testified that she still loved Whalen and hoped they would someday be married.

■ Over Whalen's hearsay objection, Sergeant Mueller was allowed to testify as to what Ness had stated at the scene. The trial court ruled that Ness's statement constituted an excited utterance, which, under Rule 803(2), N.D.R.Ev., is not excluded by the hearsay rule. Mueller testified that Ness told him (1) that when Gelinske walked to-

ward Whalen and Ness, "Whalen raised the handgun, and what she told me was she believed that he was aiming at him and fired one shot;" (2) that "she had broken up her relationship with Mr. Whalen ... and ... he really didn't like the fact that she had a new boyfriend;" (3) that Whalen "grabbed her by the coat and forced her into his car after he'd fired the shot;" (4) that Whalen "held the gun to her chest;" (5) that Whalen "pressed her to the seat and held the gun against her ... collarbone;" (6) that Whalen said of Gelinske "No, I'm going to shoot him if he doesn't leave;" and (7) that when Whalen let her out of his car, "she thought at any time that, you know, he would just shoot her because she continued walking."

Rule 803(2), N.D.R.Ev., provides:

"The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

\*   \*   \*   \*   \*   \*

"(2) *Excited Utterance.* A statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition."

■ Whalen has asserted a number of reasons, going to credibility, relevance, and weight, why Ness's statements at the time of the incident should not have been admitted in evidence under the excited utterance exception to the hearsay rule. None of the contentions is persuasive. The trial court's evidentiary ruling will be reversed only if it abused its discretion. *Hoover v. Thompson,* 787 F.2d 449 (8th Cir.1986); *Williston Farm Equipment, Inc. v. Steiger Tractor, Inc.,* 504 N.W.2d 545 (N.D.1993).

"The excited utterance exception is a firmly rooted hearsay exception." *United States v. Moore,* 791 F.2d 566, 574 (7th Cir.1986). Since the 1700s, there has been conscious recognition of a hearsay exception, often under the term "res gestae," for exclamations by persons present at affrays or other exciting occasions. John Henry Wigmore, *Evidence* § 1746 (Chadbourn rev. 1976). "The assumption underlying this exception is that a person under the sway of excitement pre-

cipitated by an external startling event will not have the reflective capacity essential for fabrication and that, consequently, any utterance will be spontaneous and trustworthy." 4 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Evidence* ¶ 803(2)[01], p. 803–101 (1994). "[L]ack of capacity to fabricate rather than lack of time to fabricate is the justification for this rule." *Id.* at 803–105.

■ The proponent of the evidence has the burden of establishing the foundational facts to make a statement admissible as an "excited utterance" exception to the hearsay rule. *Staiger v. Gaarder,* 258 N.W.2d 641, 647 (N.D.1977). Those facts must demonstrate (1) a startling event or condition; and (2) the statement as the product of the declarant's stress or excitement resulting from the startling event or condition. *Id. See also Weinstein's Evidence, supra,* at pp. 803–102, 803–104.

Whalen's firing of a handgun, whether at Gelinske or merely in the presence of the small group assembled in the parking area of Ness's apartment building, and his waving or pointing of the gun toward persons in the group constituted more than a single startling event to anyone there. The startling nature of the events would, of course, be intensified if, as Ness stated to Sergeant Mueller, Whalen also threatened to shoot Gelinske and forced Ness into a car and pressed the gun to her collarbone. Such startling events would naturally cause Ness and others involved in the incident to be excited. That Ness was still excited when she gave her statements a few minutes after the incident ended was confirmed by Sergeant Mueller's testimony that when he took statements at the scene of the incident from Ness, Houglum, and Zepper, "they were all pretty shaken up by the events that had just previously taken place. They were in a pretty highly excited state."

As the trial court recognized, when Ness provided Sergeant Mueller with her written and oral statements at the scene of the incident, she had just been exposed to a series of startling events. There was evidence that Ness was still excited from the stress of those startling events when she made her statements at the scene of the incident. The

startling events and the excitement they caused are circumstantial guarantees of the trustworthiness of Ness's statements at the scene of the incident. We conclude that the trial court did not abuse its discretion in admitting Ness's on-the-scene statements as excited utterances under Rule 803(2), N.D.R.Ev.

■ Relying upon § 12.1–32–02.1, N.D.C.C., the trial court ordered that the first two years of Whalen's three-year sentence on the reckless endangerment conviction be served "without benefit of parole." At the time of the offense, § 12.1–32–02.1, N.D.C.C., provided in part:

> "[M]inimum terms of imprisonment shall be imposed upon an offender and served without benefit of parole when, in the course of committing an offense, he ... threatens or menaces another with imminent bodily injury with ... a firearm. Such minimum penalties shall apply only when possession of a ... firearm has been charged and admitted or found to be true in the manner provided by law...."

In *State v. Sheldon,* 312 N.W.2d 367, 369 (N.D.1981), this court observed that "penal statutes should be strictly construed against the government." The court construed § 12.1–32–02.1, N.D.C.C., to apply "only if the possession of a ... firearm is an essential element of the crime committed or if the trier of fact makes a special finding that in the course of committing the offense the accused was in possession of a ... firearm." *Id.* at 370. *See also State v. Meier,* 447 N.W.2d 506 (N.D.1989). The court in *Sheldon* held that § 12.1–32–02.1, N.D.C.C., did not apply in that case because: (1) "Possession of a ... firearm is not an element of the offense of reckless endangerment," (2) the "trial court, in its instructions to the jury on the charge of reckless endangerment, made no reference to the use or possession ... of a ... firearm," and (3) "the jury was not requested to, nor did it, make a special finding with regard to the use or possession of a firearm." *State v. Sheldon, supra,* 312 N.W.2d at 370. Whalen contends there was no special jury finding that Whalen had possession of a dangerous weapon when he com-

mitted the acts constituting reckless endangerment. We disagree.

The trial court instructed the jury:

### "CHARGE TO JURY

"This is a criminal action brought to this Court by the filing of an Information charging the Defendant, Michael Wayne Whalen, with having committed the offenses of Attempted Murder, Reckless Endangerment, Terrorizing, and Carrying a Concealed Dangerous Weapon within Cass County, North Dakota, on the 7th day of April, 1993. The Information charges the offenses to have been committed as follows, to-wit:

\* \* \* \* \* \*

"*Count 2:* RECKLESS ENDANGERMENT in violation of Section 12.1–17–03, N.D.C.C. in that on or about April 7, 1993, ... said defendant, MICHAEL WAYNE WHALEN, created a substantial risk of serious bodily injury or death to Melissa Ness by pointing and holding a Davis .380 caliber semi-automatic handgun against her neck and collarbone area...."

The trial court's instructions also quoted Count 3 of the Information, which charged Whalen with terrorizing Ness by placing her "in fear for the safety of Kevin Gelinske when the defendant stated 'I'm going to shoot him', while holding a handgun." The instructions also quoted Count 5 of the Information, which charged Whalen with carrying a concealed dangerous weapon by concealing "in his jacket pocket a Davis .380 caliber semi-automatic handgun." The jury returned separate verdicts finding Whalen "GUILTY of the offense of Reckless Endangerment as charged in Count 2 of the Information;" "GUILTY of the offense of Terrorizing as charged in Count 3 of the Information;" and "GUILTY of the offense of Carrying a Concealed Dangerous Weapon as charged in Count 5 of the Information."

Count 2 of the Information specifically charged Whalen with committing reckless endangerment by pointing and holding a handgun against Ness's neck and collarbone area. Whalen could not have pointed or held a handgun to Ness's neck and collarbone

area without being in possession of the gun. Therefore, the jury's verdict finding Whalen "GUILTY of the offense of Reckless Endangerment as charged in Count 2 of the Information" is a "special finding that in the course of committing the offense the accused was in possession of a ... firearm" (*State v. Sheldon, supra,* 312 N.W.2d at 370). The same reasoning applies to the other counts of which Whalen was found guilty. We conclude, therefore, that the trial court did not err in applying § 12.1–32–02.1, N.D.C.C., in sentencing Whalen for reckless endangerment.

Affirmed.

VANDE WALLE, C.J., and NEUMANN, SANDSTROM and MESCHKE, JJ., concur.