1997 ND 47

**J. Patrick TRAYNOR, in his official capacity as Executive Director of the North Dakota Workers Compensation Bureau, and the State of North Dakota acting through the North Dakota Workers Compensation Bureau, Petitioners,**

v.

**Honorable Lawrence A. LECLERC, Presiding Judge of the District Court, East Central Judicial District; Arthur Ash and Donald Simenson, individually and on behalf of all others similarly situated, Respondents.**

**NORTH DAKOTA WORKERS COMPENSATION BUREAU, Petitioner,**

v.

**Honorable Lawrence A. LECLERC, Presiding District Judge of the East Central Judicial District, County of Cass, State of North Dakota, Respondent.**

Civil Nos. 960373, 960377.

Supreme Court of North Dakota.

April 1, 1997.

Douglas William Nesheim (argued), Fargo, for respondent Honorable Lawrence A. Leclerc, and Dean J. Haas (argued), of Dietz, Little & Haas, Bismarck, for respondent Arthur Ash, et al.

Brent J. Edison (argued), Special Assistant Attorney General, Bismarck, and Tracy Vig-

ness Kolb (appearance), Special Assistant Attorney General, Bismarck, and Jacqueline S. Anderson (submitted on briefs), Special Assistant Attorney General, Fargo, for petitioner State of North Dakota.

MESCHKE, Justice.

[¶ 1] In these two cases, J. Patrick Traynor, in his official capacity as Executive Director of the Workers Compensation Bureau, and the State [the Bureau], petitioned for supervisory writs directing the Honorable Lawrence A. Leclerc, Presiding Judge of the East Central Judicial District, to vacate orders denying their demands for change of judge and to grant their demands. We grant the petitions.

[¶ 2] The Bureau paid disability benefits to Arthur Ash and Donald Simenson, who were injured in 1988. The Bureau terminated their disability benefits when Ash and Simenson became sixty-five years old. Ash and Simenson, individually and on behalf of all other injured workers similarly situated, sued for continued disability benefits, a declaratory judgment that NDCC 65–05–09.3 [1] is unconstitutional, and an injunction against enforcement of NDCC 65–05–09.3. The case was assigned to the Honorable Frank L. Racek, District Judge. The Bureau's attorney filed a demand for change of judge under NDCC 29–15–21.[2] Judge Leclerc denied the

---

1.  NDCC 65–05–09.3(2) directs:

    An injured employee who is receiving permanent total, temporary total, or temporary partial disability benefits, or rehabilitation benefits, and who begins receiving social security retirement benefits or other retirement benefits in lieu of social security retirement benefits, or who is at least sixty-five years old and is eligible to receive social security retirement benefits or other retirement benefits in lieu of social security retirement benefits, is considered to be retired. The bureau may not pay any permanent total, temporary total, or temporary partial disability benefits, rehabilitation benefits, or supplemental benefits to an employee who is considered retired; however, the bureau is liable for payment of medical benefits and permanent partial impairment benefits. An employee who is determined to be catastrophically injured as defined by subdivision c of subsection 2 of section 65–05.1–06.1 is not subject to this section.

2.  Relevant parts of NDCC 29–15–21 direct:

    *29–15–21. Demand for change of judge.*

1.  Subject to the provisions of this section, any party to a civil or criminal action or proceeding pending in the district court may obtain a change of the judge before whom the trial or any proceeding with respect thereto is to be heard by filing with the clerk of the court in which the action or proceeding is pending a written demand for change of judge, executed in triplicate either:
    a.  By the personal signature of the party, if an individual, and by personal signature of an authorized officer or manager, if a corporation, limited liability company, or association; or
    b.  By the attorney for a party with the permission of the party, in which event the attorney shall file with the demand a certificate that the attorney has mailed a copy of the demand to such party.

2.  The demand is invalid unless it is filed with the clerk of the court not later than ten days after the occurrence of the earliest of any one of the following events:
    a.  The date of the notice of assignment or reassignment of a judge for trial of the case;
    b.  The date of notice that a trial has been scheduled; or

demand for change of judge. Judge Leclerc found NDCC 29–15–21 ambiguous:

> The statute is ambiguous in that it states that any party to a civil or criminal action may file a demand, but subsection (a) seems to limit the parties who may file a demand by requiring that the demand be signed by "the party, if an individual," or by an officer or manager of a "corporation, limited liability company, or association[.]" It does not provide for the signature of an official of a state agency.

Judge Leclerc concluded "the Bureau's demand for change of judge is an improper encroachment on powers of the judiciary and an attempt to influence assignment decisions of the presiding judge of the East Central Judicial District."

[¶ 3] Joyce Lewis appealed a Bureau decision to the district court. The case was assigned to the Honorable Frank L. Racek, District Judge. The Bureau's attorney filed a demand for a change of judge under NDCC 29–15–21. Judge Leclerc denied the demand for the reasons stated in the *Ash* case.

[¶ 4] The Bureau petitioned this court for supervisory writs directing Judge Leclerc to vacate the orders denying the demands for change of judge and to grant the demands. The Bureau contends it is a qualified party under NDCC 29–15–21 and the statute does not impermissibly encroach upon the judiciary's powers.

[¶ 5] Judge Leclerc urges us to decline to exercise our supervisory authority in these cases. Judge Leclerc contends NDCC 29–15–21 is unconstitutional on its face because it "requires no allegation of unfairness or other constitutional reason for the demand against a particular judge." Judge Leclerc also contends NDCC 29–15–21 is unconstitutional, as applied, if it is construed to allow the Bureau to remove a constitutionally elected judge from a case when the Bureau is a party.

[¶ 6] This court's authority to issue supervisory writs derives from N.D. Const., Art. VI, § 2:

> The supreme court shall be the highest court of the state. It shall have appellate jurisdiction, and shall also have original jurisdiction with authority to issue, hear, and determine such original and remedial writs as may be necessary to properly exercise its jurisdiction.

(in part); *Trinity Med. Ctr., Inc. v. Holum*, 544 N.W.2d 148, 150 (N.D.1996). *See also* NDCC 27–02–04: "The supreme court ... in its superintending control over inferior courts, [ ] may issue such original and remedial writs as are necessary to the proper exercise of such jurisdiction." Our power to issue supervisory writs is discretionary, and we use our superintending control over inferior courts "only to rectify errors and prevent injustice in extraordinary cases where no adequate alternative remedy exists." *Ho-*

---

c. The date of service of any ex parte order in the case signed by the judge against whom the demand is filed.

3. ... In any event, no demand for a change of judge may be made after the judge sought to be disqualified has ruled upon any matter pertaining to the action or proceeding in which the demanding party was heard or had an opportunity to be heard....

4. The demand for change of judge must state that it is filed in good faith and not for the purposes of delay. It must indicate the nature of the action or proceeding, designate the judge sought to be disqualified, and certify that he has not ruled upon any matter pertaining to the action or proceeding in which the moving party was heard or had an opportunity to be heard.

\* \* \* \* \*

6. Upon receipt of a copy of a demand for change of judge, the judge sought to be disqualified has no authority or discretion to de-termine the timeliness or validity of the demand and shall proceed no further or take any action in the action or proceeding and is thereafter disqualified from doing any further act in the cause unless the demand is invalidated by the presiding judge. The judge sought to be disqualified shall promptly submit to the presiding judge any comments the judge may have regarding the demand. If the presiding judge thereafter invalidates the demand because it was not timely filed or for other reasons, the judge sought to be disqualified shall resume jurisdiction in the case and hear and determine the case to conclusion.

\* \* \* \* \*

8. Upon receipt of a timely filed demand for a change of judge from the clerk of the court, the presiding judge of the judicial district in which the demand is filed shall promptly designate another judge to act in the place and stead of the judge disqualified.

*lum,* 544 N.W.2d at 151. Although reviewable on appeal from a final judgment, orders denying demands for change of judge are not appealable. *In re Estate of Ketterling,* 515 N.W.2d 158, 161 (N.D.1994). The Bureau has no alternative remedies to supervisory writs. We conclude these cases are appropriate for exercise of our supervisory jurisdiction.

[¶ 7] N.D. Const., Art. VI, § 3, authorizes this court to promulgate rules on disqualifying trial court judges:

> The supreme court shall have authority to promulgate rules of procedure, including appellate procedure, to be followed by all the courts of this state.

"In NDCC 27–02–08 and 27–02–09, the Legislature has codified the superior power of the supreme court in promulgating rules." *City of Fargo v. Ruether,* 490 N.W.2d 481, 483 (N.D.1992). However, as *State v. Vetsch,* 368 N.W.2d 547, 552 (N.D.1985) (quoting *State v. Seidel,* 142 Ariz. 587, 691 P.2d 678, 682 (1984)), explained, "[t]hat we possess the rule-making power does not imply that we will never recognize a statutory rule. We will recognize 'statutory arrangements which seem reasonable and workable' and which supplement the rules we have promulgated."

[¶ 8] Our state constitution's creation of three branches of government apportions the different classes of power, implicitly excluding each branch of state government from overriding the functions of the other branches. *State v. Hanson,* 558 N.W.2d 611 n. 1 (N.D.1996). However, "[w]e have recognized that there is an 'interplay between statutory procedures and rules promulgated by this court.' " *Id.* at 613, (quoting *Ruether,* 490 N.W.2d at 483). While this court has "final authority over procedural rules," *State v. Knudson,* 499 N.W.2d 872, 874 (N.D.1993), "statutorily enacted rules of procedure are in effect until superseded or amended by our court," *Gegelman v. Reiersgaard,* 273 N.W.2d 703, 706 (N.D.1979). *See also* NDCC 27–02–09. Under N.D. Const., Art. VI, § 3, "a procedural rule adopted by this court must prevail in a conflict with a statutory procedural rule." *Hanson,* 558 N.W.2d at 615. *Compare* N.D. Const., Art. VI, § 12, 12.1 ("The legislative assembly may provide for the retirement, discipline and removal of judges of the supreme court and district court.").

Still, when reviewing a procedural statute and a rule for conflict, we prefer to harmonize them when possible. *Murdoff v. Murdoff,* 517 N.W.2d 402, 403 (N.D.1994). In reviewing the constitutionality of a statute, we will uphold the statute "unless its challenger has demonstrated the constitutional infirmity." *Best Products Co., Inc. v. Spaeth,* 461 N.W.2d 91, 96 (N.D.1990). *State v. Ertelt,* 548 N.W.2d 775, 776 (N.D.1996), explains: "A statute is presumptively correct and valid, enjoying a conclusive presumption of constitutionality unless clearly shown to contravene the state or federal constitution."

[¶ 9] For a long time, the Legislature has allowed parties to judicial proceedings to have a change of judge upon filing an affidavit asserting bias or prejudice on the part of the judge. *See* Section 285 of the Code of Criminal Procedure, Revised Codes of the Territory of Dakota (1877), and Section 5454a of the Revised Codes of the State of North Dakota (1899), allowing either party a change of judge in civil actions.

[¶ 10] Construing § 7644, C.L.1913 (1925 Supp.), this court recognized that the "obvious purpose" of change-of-judge statutes "was to make provisions so that a party having a cause for trial at any term of a district court might obtain a change of judges as a matter of right where he had reason to believe that he could not have a fair and impartial trial before such judge." *State v. Garrison,* 68 N.D. 71, 276 N.W. 693, 694 (1937). *See also Orcutt v. Conrad,* 10 N.D. 431, 87 N.W. 982, 983 (1901) (the "chief benefit" of the change-of-judge statute is to allow a party to present "her cause to an unprejudiced tribunal").

[¶ 11] The change-of-judge statutes were ultimately codified in NDCC 28–13–01 and NDCC 29–15–13 for civil and criminal actions, respectively. In 1971, though, the Legislature repealed those sections and enacted a new procedure for demanding a change of judge in both civil and criminal actions. 1971 N.D. Laws, ch. 316. That legislation, codified at NDCC 29–15–21, elim-

inated the former requirement of an affidavit of prejudice to get a change of judge, and adopted the present procedure that allows a party to get a change of judge by filing a written demand for change of judge, which must state that it is filed in good faith and not for the purpose of delay. *State v. Zueger*, 459 N.W.2d 235, 236 (N.D.1990), explains, under NDCC 29–15–21, "a party is entitled to a peremptory challenge of an assigned judge, without alleging bias or prejudice."

[¶ 12] One district judge testifying in favor of Senate Bill 2383 (1971 N.D. Laws, ch. 316), described it as a "housecleaning law." He testified that a judge may have a conflict of interest and that "[s]ome clients do not feel they want to say it is due to prejudice." He added:

> This bill is designed to simplify the procedure for obtaining a change of judge in district court. Under the proposal a litigant may obtain a change of judge simply by filing a statement entitled "Demand for a change of judge," without having to specify any grounds for the change.

An attorney in favor of the bill testified: "Affidavit of prejudice words are derogatory." In *State v. Holmes*, 106 Wis.2d 31, 315 N.W.2d 703, 716–17 (1982), the Wisconsin Supreme Court explained one of the main reasons for enactment of a statute like ours:

> The legislative purpose in adopting [the statute] was to remedy the ills caused by the affidavit of prejudice statute. Because the Wisconsin affidavit of prejudice statutes required no substantiation of or determination of the allegation of prejudice, many thought the procedure unjustly impugned the integrity of the judges to whom the affidavits were addressed and that the unchallenged and undetermined charges of judicial prejudice spread on the court records gave the public a distorted picture of judicial impartiality.

The court in *Holmes*, 315 N.W.2d at 714 recognized, as we do, that other appellate courts have invalidated peremptory substitution statutes. As the *Holmes* court explained, 315 N.W.2d at 715, the purpose of the peremptory substitution statute "is the same as that of the earlier affidavit of prejudice statutes, namely, to ensure the right to a fair trial by permitting parties to strike a judge who is prejudiced or gives the appearance of being prejudiced."

[¶ 13] We agree with the *Holmes* analysis, 315 N.W.2d at 709–11:

> Regulation of substitution of judges falls within the above described vast stretches of ambiguous territory in which the functions of two branches, namely the judicial and the legislative, overlap. Both the judiciary and the legislature are empowered to ensure not only that the fairness and integrity of the courts be maintained but also that the operation of the courts be conducted in such a manner as will avoid even the suspicion of unfairness.
>
> * * * * *
>
> Although the separation of powers doctrine prohibits the legislature from acting in certain spheres which are exclusively within the power of the courts, the doctrine does not necessarily prohibit the legislature from exercising its legislative public policy making powers in areas that may in some way affect the judicial branch of government.... The legislature, in obedience to its duty to promote the public interest, may enact laws to assure fair trial. (Citation omitted). The legislature may enact statutes which provide the means for assuring litigants their constitutional right to have their cases heard by an unbiased judge, and the legislature may, to effectuate the public policy of maintaining a fair judicial system and public confidence in that system, grant litigants broader rights to challenge a judge than are granted under the constitution so that litigants are assured both the actuality and appearance of a fair trial.

[¶ 14] In exercising our rulemaking authority, this court has impliedly recognized the validity of NDCC 29–15–21. N.D. Admin.R. 2(10) directs: "The presiding judge assigns, when appropriate, judges from within the judicial district in cases of demand for change of judge under Section 29–15–21, NDCC." NDCC 29–15–21 is a reasonable and workable statutory arrangement for permitting a litigant to obtain a change of judge, thereby assuring fair trials and promoting

the fairness and integrity of the courts. The statute is calculated to avoid even the suspicion of unfairness and to promote public confidence in the judicial system. The statute does not conflict with any rules promulgated by this court. We conclude that NDCC 29–15–21 is not unconstitutional as a violation of the separation of powers doctrine.

[¶ 15] Judge Leclerc urges us to interpret "party" in NDCC 29–15–21 to exclude government agencies from the right to demand a change of judge. The government is often a party in civil actions and is always a party in criminal actions. Section 285 of the Code of Criminal Procedure, Revised Codes of the Territory of Dakota (1877), authorized an accused in a criminal action a change of judge, while § 291 allowed the government to remove an action to a different court. Later, 1923 N.D. Laws, ch. 331, § 1, codified as C.L.1913, § 7644 (1925 Supp.), R.C.1943, § 29–1513, and NDCC 29–15–13 allowed either party to a criminal action to get a change of judge. Section 5454a of the Revised Codes of the State of North Dakota (1899) allowed "either party to a civil action" a change of judge. The procedures for a change of judge in civil and criminal actions were blended in 1971:

1. .... any party to a civil or criminal action or proceeding in the district court ... may obtain a change of judge ... by filing ... a written demand for change of judge, executed in triplicate by the personal signature of the party, if an individual, and by personal signature of an authorized officer, if a corporation or association.

1971 N.D. Laws, ch. 316, § 1. That enactment was codified as NDCC 29–15–21(1). By placing no limitation on the definition of a "party," the Legislature clearly intended the government to be a "party" authorized to demand a change of judge.

[¶ 16] In 1983, the present signature requirements for litigants who are individuals, corporations or associations were placed in NDCC 29–15–21(1)(a), and a subsection specifying how a demand for change of judge could be made by an attorney for a litigant was added:

(b) By the attorney for a party with the permission of the party, in which event the attorney shall file with the demand a certificate that the attorney has mailed a copy of the demand to such party.

1983 N.D. Laws, ch. 368, § 1. This amendment specified how an "attorney for a party" could make a demand for change of judge; it did not eliminate the government's existing right to demand a change of judge. As Representative Conmy explained at a legislative committee hearing, the change "would take care of the concern of judges that clients are not aware of a change of judge being demanded by the attorney."

[¶ 17] Judge Leclerc asserts "the 'for other reasons' in section 29–15–21(6) suggests that the presiding judge may deny a demand for change of judge for reasons other than lack of timeliness," and he requests we "construe [ ] the statute to retain in the presiding judge the constitutional authority to question a particular demand in order to ensure openness and fairness in the courts and the proper independent functioning of the judiciary." A party's right "to a peremptory challenge of an assigned judge" under NDCC 29–15–21 "is not unlimited." *State v. Zueger*, 459 N.W.2d 235, 236 (N.D.1990). NDCC 29–15–21(6) authorizes the presiding judge to "invalidate[ ] the demand because it was not timely filed or for other reasons." NDCC 29–15–21 contains a number of requirements that, if not performed, would be "other reasons" for invalidation of a demand for change of judge: a demand must be executed in triplicate, filed before the judge sought to be disqualified has ruled upon any matter, "state that it is filed in good faith and not for the purposes of delay," and "indicate the nature of the action or proceeding, designate the judge sought to be disqualified, and certify that he has not ruled upon any matter pertaining to the action or proceeding in which the moving party was heard or had an opportunity to be heard."

[¶ 18] The court in *State v. City Court of City of Tucson*, 150 Ariz. 99, 722 P.2d 267, 270–71 (1986), dealt with a series of requests for change of judge that it deemed "an improper attempt to influence a judge in his judicial decisions" and "an abuse of the rules and a threat to the independence and integrity of the judiciary." We need not decide in this case if "other reasons" might include such factors, although not specified in NDCC

29–15–21. Two demands for change of judge by the Bureau do not evidence abuse of the statute.

[¶ 19] We direct Judge Leclerc to vacate the orders denying the Bureau's demands for change of judge and to grant them.

[¶ 20] VANDE WALLE, C.J., MARING, J., and RALPH J. ERICKSTAD, Surrogate Judge, concur.

[¶ 21] RALPH J. ERICKSTAD, Surrogate Judge, sitting in place of NEUMANN, J., disqualified.

SANDSTROM, Justice, concurring specially.

[¶ 22] I agree with much of what the majority has written. I write separately to note my exception to the majority's adoption and reliance, at ¶¶ 12–13, on the analysis of *State v. Holmes,* 106 Wis.2d 31, 315 N.W.2d 703, 716–17 (1982).

[¶ 23] Provisions for change of judge, other than for actual good cause, are inherently procedural in nature. Here, the judiciary has acquiesced in the statutory provisions. The result would be different if the judiciary were to occupy the field by rule. *See State v. Hanson,* 558 N.W.2d 611 (N.D.1996).

[¶ 24] DALE V. SANDSTROM