1997 ND 200

Robert John FALCON, Petitioner
and Appellant,

v.

STATE of North Dakota, Respondent
and Appellee.

Civil No. 970097.

Supreme Court of North Dakota.

Oct. 21, 1997.

Lynn M. Boughey, Boughey Law Firm, Minot, for petitioner and appellant.

John P. Van Grinsven III, Assistant State's Attorney, Minot, for respondent and appellee.

SANDSTROM, Justice.

[¶ 1] Robert Falcon appeals from a trial court memorandum decision and order denying his petition for post-conviction relief. We affirm, holding N.D.C.C. § 29–15–21 demand for change of judge does not apply to proceedings brought under the Uniform Post–Conviction Procedure Act, and Falcon's claim of ineffective assistance of counsel is without merit.

I

[¶ 2] In February 1995, after a bench trial, Judge Olson found Robert Falcon guilty of simple assault. In July 1995, Robert Falcon was convicted by a jury of terrorizing and preventing arrest or discharge of other duties. Falcon appealed the jury convictions to this Court, "claiming he was denied effective assistance of counsel in violation of his constitutional rights." *State v. Falcon*, 546 N.W.2d 835, 836 (N.D.1996). This Court affirmed the judgment of the district court, but stated "the defendant may pursue the claim at a post-conviction proceeding where an ad-

equate record can be developed." *Falcon* at 837.

[¶ 3] In May 1996, Falcon filed an application for a postconviction hearing under N.D.C.C. ch. 29–32.1. At the same time, Falcon filed a motion for a change of judge under N.D.C.C. § 29–15–21. The request for a change of judge was denied on June 6, 1996. Amended requests for post-conviction relief were filed in October 1996. Another request for a change of judge was filed in November of 1996 and was denied on December 5, 1996. Judge Olson denied Falcon's post-conviction petition on March 20, 1997.

II

[¶ 4] Falcon appeals from the June 6, 1996, order denying change of judge, the December 5, 1996, order denying change of judge, and the March 20, 1997, order denying post-conviction relief.

[¶ 5] The Ward County District Court had jurisdiction under N.D. Const. Art. VI, § 8, and N.D.C.C. § 29–32.1–03. This Court has jurisdiction under N.D. Const. Art. VI, § 6, and N.D.C.C. § 29–32.1–14 to review a "final judgment" of decision under the Uniform Post–Conviction Procedure Act. The orders denying change of judge are interlocutory, and no final judgment was issued. This Court "will review an intermediate order on appeal from a final judgment," and under *Kaiser v. State*, 417 N.W.2d 175 (N.D.1987), it is proper to treat the appeal in this case as an appeal from a final judgment, because "the court intended the order to have the effect of a final judgment." *Matter of Estate of Ketterling*, 515 N.W.2d 158, 161 (N.D. 1994); *Kaiser* at 177; *see* N.D.R.App.P. 35; *Traynor v. Leclerc*, 1997 ND 47, 561 N.W.2d 644.

III

[¶ 6] Falcon argues the trial court erred in refusing to grant his demand for change of judge under N.D.C.C. § 29–15–21. The State contends, however, N.D.C.C. § 29–15–21 does not apply to post-conviction proceedings.

[¶ 7] N.D.C.C. § 29–15–21 provides, in part:

"Demand for change of judge.

"1.  Subject to the provisions of this section, any party to a civil or criminal action or proceeding pending in the district court may obtain a change of the judge before whom the trial or any proceeding with respect thereto is to be heard by filing with the clerk of the court in which the action or proceeding is pending a written demand for change of judge, executed in triplicate either:

\* \* \* \*

"3.  ... In any event, no demand for a change of judge may be made after the judge sought to be disqualified has ruled upon any matter pertaining to the action or proceeding in which the demanding party was heard or had an opportunity to be heard. Any proceeding to modify an order for alimony, property division, or child support pursuant to section 14–05–24 or an order for child custody pursuant to section 14–05–22 must be considered a proceeding separate from the original action and the fact that the judge sought to be disqualified made any ruling in the original action does not bar a demand for a change of judge.

"4.  The demand for change of judge must state that it is filed in good faith and not for the purposes of delay. It must indicate the nature of the action or proceeding, designate the judge sought to be disqualified, and certify that he has not ruled upon any matter pertaining to the action or proceeding in which the moving party was heard or had an opportunity to be heard."

[¶ 8] Falcon argues our previous decisions labeling post-conviction proceedings civil in nature—not criminal, like the underlying action—indicates a post-conviction proceeding is a new proceeding for the purposes of N.D.C.C. § 29–15–21. Falcon argues under N.D.C.C. § 29–15–21 he had the right to peremptorily remove Judge Olson because Judge Olson had not ruled upon any post-conviction matter at the time Falcon filed his motion for change of judge.

### A

[¶ 9] "[A] motion under the Uniform Post–Conviction Procedure Act is treated as an independent civil action...." *State v. Jensen,* 333 N.W.2d 686, 690 (N.D.1983). While we have repeatedly said proceedings under the Uniform Post–Conviction Procedure Act are civil *in nature,* we have never interpreted whether such a proceeding is to be considered separate from the underlying criminal action so as to allow the peremptory removal of a judge under N.D.C.C. § 29–15–21. The interpretation of a statute is a fully reviewable question of law, "and our primary objective is to ascertain the intent of the legislature by looking at the language of the statute itself and giving it its plain, ordinary and commonly understood meaning. Consideration should be given to the context of the statutes and the purposes for which they were enacted." *Van Klootwyk v. Arman,* 477 N.W.2d 590, 591–92 (N.D.1991) (citations omitted). "[W]hen a statute is not clear on its face, we look to extrinsic aids, such as legislative history, to determine the legislature's intent." *State v. Eldred,* 1997 ND 112, ¶ 19, 564 N.W.2d 283.

### B

[¶ 10] In *Estate of Ketterling,* this Court addressed whether to allow a change of judge when a formal probate proceeding was initiated after informal probate proceedings had begun. In *Ketterling,* the appellant contended "because each proceeding before the court in an unsupervised administration is independent of any other proceeding involving the same estate, the judge in the informal proceedings has not, in effect, already participated in the case." *Ketterling* at 166 (citations omitted). This Court stated:

"A trial judge is assigned to preside over estate proceedings whether they are formal or informal in nature. Although portions may be separate and independent for some purposes, they relate to the same estate. It is the estate, rather than the nature of the proceedings involved, that we believe should govern application of NDCC 29–15–21. Adopting Lloyd's argument would jeopardize the express objectives of

speed and efficiency in the handling of estates sought to be attained by the Uniform Probate Code. Therefore, we decline to adopt Lloyd's argument that a person is entitled to peremptorily disqualify an assigned judge every time a formal proceeding is commenced during the probate of an estate."

*Ketterling* at 166 (citations omitted).

[¶ 11] The logic of *Ketterling* and a similar policy determination apply equally to this case. In *Ketterling,* both informal and formal probate proceedings were brought concerning one estate. Similarly, this case involves a direct appeal and a post-conviction proceeding, both concerning one criminal case. Just as the objectives of the Uniform Probate Code—speed and efficiency—were considered in *Ketterling,* the objectives of the Uniform Post–Conviction Procedure Act are relevant to this case.

[¶ 12] N.D.C.C. § 29–32.1–03(1) of the Uniform Post–Conviction Procedure Act provides "[a] proceeding is commenced by filing an application with the clerk of the court in which the conviction and sentence took place." In *McGuire v. Warden of the State Farm,* 229 N.W.2d 211, 215 (N.D.1975), this Court cited the commentary of the Commissioners on Uniform State Laws, which stated filing with the clerk of court in which the defendant was convicted and sentenced is advantageous because " 'the convicting court is more familiar with the background and facts of the case.' " Only if the case were also returned to the same judge would this advantage be realized. *Compare Johnson v. State,* 486 N.W.2d 825, 828 (Minn.Ct.App. 1992) ("The trial judge's familiarity with the facts of this case enhanced his evaluation of the probative value of the alleged newly discovered evidence.").

[¶ 13] In 1985 when the legislature adopted the revised Uniform Post–Conviction Procedure Act, Judge Eugene Burdick, a Uniform State Laws Commissioner, testified in favor of the bill and submitted a written statement. In his written statement, Judge Burdick stated the revisions to the Uniform Post–Conviction Procedure Act "reflect the latest ABA Criminal Justice Standards."

[¶ 14] The American Bar Association's Standards for Criminal Justice (1980), the standards referred to by Judge Burdick, characterized the nature of post-conviction proceedings:

"The procedural characteristics of the postconviction remedy should be appropriate to the purposes of the remedy. *While the postconviction proceeding is separate from the original prosecution proceeding, the postconviction stage is an extension of the original proceeding and should be related to it insofar as feasible.*"

(emphasis added). *See Johnson* at 827 (citing same). Standard 22–1.4(c), addressing the assignment of judges, provides:

"(c) Neither a general rule favoring nor one disfavoring submission of a postconviction application to the same trial judge who originally presided is clearly preferable. If by rule or practice ordinary assignment to the same judge is adopted, there should be a declared policy permitting the judge freely to recuse himself or herself in a particular case, whether or not formally disqualified."

The commentary to the standard further explains:

"The current practice, to the extent known, seems to favor the assignment of applications for postconviction relief to the same judge who presided at the original trial. The same judge brings to the postconviction proceeding familiarity with the case or the applicant that may enable more efficient handling. The same judge may be freer in fact to consider or reconsider matters affecting prior rulings than would a colleague on the bench. On the other hand, there are obvious disadvantages and risks in such a practice. There is value in seeking determination from a mind not predisposed by prior incidents, and a significant related value that the arbiter appear not to be predisposed. . . .

"The standard views either general policy for assignment of judges as acceptable."

(emphasis added).

[¶ 15] While the American Bar Association's Standards for Criminal Justice do not decide whether post-conviction proceed-

ings should be handled by the same judge, there is no policy against using the same judge in a post-conviction proceeding. *See Berg v. State*, 403 N.W.2d 316, 318 (Minn.Ct. App.1987) (stating it is not improper for the trial judge to also be the post-conviction judge). Our cases make clear, "[a] ruling adverse to a party in the same or prior proceeding does not render a judge biased so as to require disqualification." *Farm Credit Bank v. Brakke*, 512 N.W.2d 718, 720 (N.D. 1994) (citing *In re Hipp, Inc.*, 5 F.3d 109, 116 (5th Cir.1993) and *Sargent County Bank v. Wentworth*, 500 N.W.2d 862, 879 n. 10 (N.D. 1993)).

▮ [¶ 16] In a scenario similar to Falcon's, the Minnesota Court of Appeals, in *Johnson v. State*, denied the peremptory removal of a judge for a post-conviction proceeding brought under Minnesota's version of the Uniform Post–Conviction Procedure Act. The Minnesota Court of Appeals, citing the American Bar Association's Standards for Criminal Justice, referred to a post-conviction proceeding as a "state corrective process, similar to an appeal in that it is an extension of the criminal prosecution." *Johnson* at 827 (citing Standard 22–1.2). The Minnesota Court of Appeals further stated, in language echoing this Court's decision in *Ketterling*, "the analysis of whether a postconviction petition is a new proceeding depends on the general character of the proceeding and not on the specific allegations in an individual case." *Johnson* at 827.

[¶ 17] In looking at the character of the case, the Minnesota Court of Appeals noted the post-conviction proceeding was not based upon allegations of error by the trial court. *Johnson* at 827–28. This case is similar because the hearsay testimony, which Falcon contends is the basis for an ineffective assistance of counsel claim, was not objected to by Falcon's trial counsel and the trial judge had not ruled on the matter. As such, it seems appropriate the trial judge would have the

first opportunity to determine whether it would have been admitted over an objection had one been made. The memorandum decision of Judge Olson specifically concluded "the objections would have been without merit under the applicable rules of evidence and case law."

▮ [¶ 18] Based upon the legislative history of N.D.C.C. ch. 29–32.1, the American Bar Association's Standards for Criminal Justice, our prior case law, and the Minnesota Court of Appeal's decision in *Johnson*, post-conviction proceedings in North Dakota are appropriately treated as a continuation of the criminal prosecution for purposes of N.D.C.C. § 29–15–21. Thus a party bringing a post-conviction petition is not entitled to a new judge under N.D.C.C. § 29–15–21 when the post-conviction judge was also the trial judge. Under N.D.C.C. § 27–05–27, the post-conviction proceeding should be heard by the same judge, absent a showing of bias or prejudice. N.D.C.C. § 27–05–27 provides "any motion for a new trial, settlement of a proposed case, judgment notwithstanding the verdict, or vacation or modification of an order, judgment, or other proceeding, must be presented and heard before the judge before whom the matter was heard, considered, or determined, unless for any reason the judge is unable to act."

[¶ 19] N.D.C.C. §§ 27–05–27 and 29–15–21 specifically make an exception for proceedings to modify an order for alimony, property division, child support, or child custody.[1] *See Ketterling* at 166. "The legislature has not distinguished between" a direct criminal proceeding and a post-conviction proceeding "for disqualification of a judge, and we decline [Falcon's] invitation to do so." *Ketterling* at 166. The trial court did not err in denying the peremptory removal of a judge under N.D.C.C. § 29–15–21.

## IV

▮ [¶ 20] Falcon's petition claims his trial counsel provided him with ineffective assis-

---

1. N.D.C.C. § 27–05–27 incorrectly refers to N.D.C.C. § 29–15–21(2). The exception for modification proceedings involving alimony, property division, child support, or child custody is at N.D.C.C. § 29–15–21(3). In 1981, the legislature added the language concerning modification proceedings to N.D.C.C. § 29–15–21(2) and at the same time amended section 27–05–27 to refer to N.D.C.C. § 29–15–21(2). *See* 1981 N.D. Laws ch. 318. In 1983, the language added in 1981 concerning modification proceedings was moved to N.D.C.C. § 29–15–21(3) without changing N.D.C.C. § 27–05–27 to refer to N.D.C.C. § 29–15–21(3). *See* 1983 N.D. Laws ch. 368.

tance because he failed either to object to hearsay testimony offered by the State or to limit the cumulative nature of the hearsay.

[¶ 21] "Generally, we review a trial court's evidentiary ruling under an abuse of discretion standard." *Knudson v. Director, North Dakota Dep't of Transp.*, 530 N.W.2d 313, 316 (N.D.1995). "However, ineffectiveness of counsel is a mixed question of law and fact and we have held such questions are fully reviewable by this court...." *State v. Foster*, 1997 ND 8, ¶ 18, 560 N.W.2d 194 (citation omitted).

[¶ 22] The hearsay testimony Falcon points to as the basis for his ineffective assistance of counsel claim involves statements made by his former wife Frances to several persons after she fled. At trial, the witnesses testified about the statements Frances made to them, and Falcon's trial counsel did not object. The trial court held a post-conviction evidentiary hearing to address Falcon's claim his trial counsel should have objected to the statements as hearsay or attempted to limit the cumulative nature of the comments. In its memorandum opinion, the post-conviction court ruled the objections, if made, would have been without merit and overruled.

[¶ 23] In *State v. Whalen*, 520 N.W.2d 830, 832 (N.D.1994), we addressed the admission of evidence under N.D.R.Ev. 803(2), the exception for excited utterances, and stated the proponent must establish a proper factual foundation showing the facts "demonstrate (1) a startling event or condition; and (2) the statement as the product of the declarant's stress or excitement resulting from the startling event or condition." In *Whalen*, a handgun was first fired at one party and then pointed at other parties. One of the parties made a statement to police about a half-hour later, but repudiated much of her testimony at trial. We affirmed the trial court's admission of her initial statement under N.D.R.Ev. 803(2), stating the events "constituted more than a single startling event" and "[t]here was evidence that [the declarant] was still excited from the stress of those startling events when she made her statements...." *Whalen* at 831–32.

[¶ 24] The facts of this case are similar to those in *Whalen*. As we detailed in Falcon's direct appeal, Frances arrived at a neighbor's house nervous and scared. The neighbor testified Frances called her mother and the police and Frances told her Falcon had put a gun to her chest. The police arrived shortly thereafter. The initial officer on the scene testified Frances "appeared to be crying, shaken, scared, and nervous," and the left side of Frances' face was red. Frances told the officer Falcon had assaulted her and pulled a gun on her. *Falcon* at 836. Also similar to *Whalen*, Frances repudiated part of her testimony at trial, but the parties to whom Frances made the statements were allowed to testify without objection from Falcon's trial counsel. In concluding the evidence would have been admissible under N.D.R.Ev. 803(2) as substantive evidence, the post-conviction court specifically relied upon *Whalen* and stated "[a]n extensive foundation was laid at trial concerning the mental state of Frances Falcon...." Indeed, at trial, even though Frances repudiated her testimony concerning the gun, she herself testified she was scared and crying and was "too upset to really worry about how much" her face hurt from being hit. The post-conviction court properly concluded the evidence would have been admissible had it been objected to at trial.

[¶ 25] At oral argument, Falcon's post-conviction appellate counsel conceded *Whalen* is controlling, but urged it be overturned or modified to create a new rule limiting the admission of otherwise admissible hearsay when a victim recants. We decline this invitation and affirm the decision of the district court. *See also State v. Lefthand*, 523 N.W.2d 63, 69 (N.D.1994) ("When no exception or exclusion applies, hearsay may not be used as substantive evidence, but only to impeach under Rule 613, N.D.R.Ev."); *State v. Burgard*, 458 N.W.2d 274, 279 (N.D.1990) (holding the "[e]rroneous admission of evidence which is merely cumulative to other properly admitted evidence is not prejudicial, does not affect substantial rights of the parties, and accordingly is harmless error").

Because the evidence would have been admissible over an objection, had one been made, Falcon was not provided ineffective assistance of counsel.

## V

[¶ 26] The order of the district court denying Falcon's petition for post-conviction relief is affirmed.

[¶ 27] VANDE WALLE, C.J., and MESCHKE, NEUMANN and MARING, JJ., concur.