1999 ND 226

**In the Matter of the CONSULTATIONS UNDER N.D.C.C. SECTION 27–05–02.1 REGARDING JUDGESHIP Nos. 6 and 7 in the NORTHEAST JUDICIAL DISTRICT; Judgeship No. 2 in the Northeast Central Judicial District; Judgeship Nos. 6, 7, and 8 in the Northwest Judicial District; Judgeship Nos. 4 and 9 in the South Central Judicial District, and Judgeship Nos. 1, 3, and 5 in the Southwest Judicial District.**

**Nos. 990224, and 990246–990249.**

Supreme Court of North Dakota.

Dec. 2, 1999.

## ORDER

[¶ 1] On January 1, 1991, there were 27 district court and 26 county court judgeships in the state. The 1991 North Dakota Legislative Assembly abolished the county courts and the office of county judge in all counties effective January 1, 1995, and established 53 district court judgeships. See N.D.C.C. § 27–05–00.1.

[¶ 2] The 1991 Legislative Assembly also required the Supreme Court to reduce the number of district judges to 42 before January 2, 2001, and established the procedure to accomplish the required reduction. See N.D.C.C. § 27–05–01(2) and § 27–05–02.1.

[¶ 3] To date, this Court has, through attrition, reduced the number of district court judgeships in the state to 43. However, we have made inquiry and we have not received notice of the impending resignation or retirement of any currently sitting district court judge. This Court, therefore, for the first time must exercise the authority conferred on it under N.D.C.C. § 27–05–02.1(2) and (3). These sections specify that if on July 1, 1999, the number of district court judges is more than 42 and no resignation or retirement is pending, this Court must, after consultation with district court judges and attorneys in the affected judicial district, abolish an office of district court judge. N.D.C.C. § 27–05–02.1(2) further requires this Court to notify the affected judicial district and district court judge holding that office, at least one year before the end of the term of office of the district court judge, that the judgeship will be abolished at the end of the term of office.

[¶ 4] The judgeship to be abolished must be selected from those judgeships whose term expires in December 2000. N.D.C.C. § 27–05–02.1(2). The terms of office for 12 of the 43 district court judgeships will expire December 31, 2000. These judgeships are: Judgeships Nos. 6 and 7 in the Northeast Judicial District; Judgeship No. 2 in the Northeast Central Judicial District; Judgeships Nos. 6, 7, and 8 in the Northwest Judicial District; Judgeships Nos. 4 and 9 in the South Central Judicial District; Judgeship No. 8 in the Southeast Judicial District; and Judgeships Nos. 1, 3, and 5 in the Southwest Judicial District. Because this Court on April 22, 1999, determined the vacancy in Judgeship No. 9 of the Southeast Judicial District must be filled, we are not revisiting that decision and the judgeship in the Southeast Judicial District has been excluded from this consideration.

[¶ 5] As required by N.D.C.C. § 27–05–02.1 we consulted with judges and attorneys from the Northeast Judicial District, the Northeast Central Judicial District, the Northwest Judicial District, the Southwest Judicial District, and the South Central Judicial District. As required by our order and N.D. Sup.Ct. Admin. R. 7.2, each district submitted a report addressing the criteria set forth in N.D. Sup.Ct. Admin. R. 7.2, § 4 to evaluate judicial vacancies for compliance with N.D.C.C. § 27–05–02.1. Those criteria include:

1. Population;
2. Caseloads and unusual case types;
3. Trends in 1 and 2;
4. Impact of proposed vacancy disposition on travel requirements;
5. Age or possible retirement of remaining judges in the affected judicial district; and
6. Availability of facilities (e.g., law enforcement, correctional, and court facilities).

[¶ 6] This Court has reviewed the 1997 weighted caseload study, the 1998 weighted caseload study, and the statistics available under the weighted caseload study for nine months of 1999. The Court has also reviewed information provided by the Department of Health and the Office of the Attorney General regarding population trends and projections and crime statistics.

[¶ 7] Based upon our review and recognizing our state's scarce judicial resources must be allocated in a manner to best

achieve effective judicial administration, we are compelled to designate Judgeship No. 5 in the Southwest Judicial District with chambers in Bowman for abolition effective at the end of the current judicial term.

[¶ 8] Our decision is based upon a review of caseloads and populations in each of the judicial districts and upon projections of population changes.

[¶ 9] The weighted caseload study allocates the amount of judicial resources (including judges and judicial referees) needed to handle the cases filed in a district after weighting each type of case by the amount of time required to process an average case of that type. The study adjusts each district for travel time depending on whether that district requires high travel, moderate travel or low travel time from the judges serving the district. The study also allocates time which is not available for handling cases but which is required in each district for the presiding judge to handle administrative matters. The resulting computation is the minimum judicial resources (expressed as a "judicial FTE" which includes both judges and judicial referees) to meet the needs based upon weighted case filings.

[¶ 10] When the minimum judicial FTE's required are compared to the judicial FTE's currently available in a district, the difference is expressed as a positive number, indicating there are more judicial resources available than current weighted case filings require, or a negative number, indicating that there are fewer judicial resources than are needed to serve that district's weighted case filings.

[¶ 11] The weighted caseload studies show the judicial margins in all judicial districts of the state. The following reports omit juvenile dismissals because dismissals of juvenile cases have a negligible impact on judicial workload. Further, because Griggs County was transferred from the Northeast Central Judicial District to the Southeast Judicial District in 1999, the following reports for 1997 and 1998 have been adjusted to assume the filings in Griggs County were part of the Southeast Judicial District:

**1997 Weighted Caseload Study**
**Without Juvenile Dismissals**

| DISTRICT | WEIGHTED FILINGS | JUDICIAL FTE REQUIRED | TOTAL ADJUSTED JUDICIAL FTE | DIFFERENCE |
|---|---|---|---|---|
| East Central | 632,542 | 9.38 | 8.88 | −0.50 |
| Northeast | 404,604 | 6.95 | 6.88 | −0.07 |
| Northeast Central | 366,282 # | 5.43 | 6.88 | +1.45 |
| Northwest | 454,910 | 7.07 | 8.88 | +1.81 * |
| South Central | 577,863 | 8.98 | 9.36 | +0.38 |
| Southwest | 178,917 | 2.78 | 3.88 | +1.10 |
| Southeast | 380,050 | 6.53 | 5.88 | −0.65 |
| Totals | 2,995,169 | 47.11 | 50.64 | +3.53 * |

# The Northeast Central Judicial District experienced a 26% reduction in civil filings in 1997 when compared to 1996. The reduction is believed to be caused by the April 1997 flood that closed the City of Grand Forks for several months. See *North Dakota Courts, Annual Report*, 1997, at 10.

* Judgeship No. 3, chambered in Minot, North Dakota, was terminated at the retirement on December 31, 1998 of the Honorable Wallace D. Berning.

### 1998 Weighted Caseload Study
### Without Juvenile Dismissals

| DISTRICT | WEIGHTED FILINGS | JUDICIAL FTE REQUIRED | TOTAL ADJUSTED JUDICIAL FTE | DIFFERENCE |
|---|---|---|---|---|
| East Central | 666,349 | 9.88 | 8.88 | −1.00 |
| Northeast | 383,194 | 6.58 | 6.88 | +0.30 |
| Northeast Central | 429,234 | 6.36 | 6.88 | +0.52 |
| Northwest | 446,741 | 6.94 | 7.88 | +0.94 |
| South Central | 537,403 | 8.35 | 9.36 | +1.01 |
| Southwest | 178,569 | 2.77 | 3.88 | +1.11 |
| Southeast | 385,679 | 6.62 | 5.88 | −0.74 |
| **Totals** | 3,024,731 | 47.51 | 49.64 | +2.13 |

[¶ 12] In 1997 there were 44 district judges. The weighted caseload study for that year indicates the following weighted filings per existing total adjusted judicial FTE in each district:

| DISTRICT | EXISTING TOTAL ADJUSTED FTE | WEIGHTED FILINGS PER JUDICIAL FTE |
|---|---|---|
| East Central | 8.88 | 71,232 |
| Northeast | 6.88 | 58,809 |
| Northeast Central | 6.88 | 53,239 |
| Northwest | 8.88 | 51,229 * |
| South Central | 9.36 | 61,738 |
| Southwest | 3.88 | 46,113 |
| Southeast | 5.88 | 64,634 |

* Judgeship No. 3 with chambers in Minot was terminated upon the retirement on December 31, 1998 of the Honorable Wallace D. Berning.

[¶ 13] Based upon our 1998 study, the weighted filings per existing total adjusted judicial FTE in each district was as follows:

| DISTRICT | EXISTING TOTAL ADJUSTED FTE | WEIGHTED FILINGS PER JUDICIAL FTE |
|---|---|---|
| East Central | 8.88 | 75,039 |
| Northeast | 6.88 | 55,697 |
| Northeast Central | 6.88 | 62,388 |
| Northwest | 7.88 | 56,693 |
| South Central | 9.36 | 57,415 |
| Southwest | 3.88 | 46,023 |
| Southeast | 5.88 | 65,592 |

[¶ 14] The statewide average weighted filing per adjusted judicial FTE in 1998 was 60,933. If one judgeship were eliminated so that the total adjusted judicial FTE's were 48.64, the statewide average weighted case filing per judicial FTE in 1998 would be 62,186.

[¶ 15] Using 1998 weighted filings, a comparison of all judicial districts with one judge removed in each district, the resulting weighted filing per judicial FTE would be as follows:

| DISTRICT | TOTAL ADJUSTED FTE WITH ONE JUDGE REDUCED | WEIGHTED FILINGS PER JUDICIAL FTE |
|---|---|---|
| East Central | 7.88 | 84,562 |
| Northeast | 5.88 | 65,169 |
| Northeast Central | 5.88 | 72,999 |
| Northwest | 6.88 | 64,933 |
| South Central | 8.36 | 64,283 |
| Southwest | 2.88 | 62,003 |
| Southeast | 4.88 | 79,033 |

[¶ 16] Only the Southwest Judicial District would remain below the statewide adjusted average of weighted filings to judicial FTE if one judgeship were reduced from that district.

[¶ 17] The weighted caseload studies indicate the Northwest Judicial District (1997—+1.81; 1998—+0.94), the South Central Judicial District (1997—+.38; 1998—+1.01) and the Southwest Judicial District (1997—+1.10; 1998—+1.11) have the largest judicial margins and are most able to accept a reduction in judgeship based upon weighted case filings. When that computation is coupled with population trends, it is apparent that appropriate planning for judicial needs requires the reduction be made where the greatest reduction of population is anticipated.

[¶ 18] To examine trends in population changes, we have reviewed projections prepared at the direction of the Department of Health.

[¶ 19] The 1990 populations of the judicial districts were:

| DISTRICT | POPULATION |
|---|---|
| East Central (3 counties) | 114,046 |
| Northeast (11 counties) | 88,171 |
| Northeast Central (2 counties) | 75,093 |
| Northwest (6 counties) | 98,355 |
| South Central (12 counties) | 130,965 |
| Southwest (8 counties) | 41,175 |
| Southeast (11 counties) | 90,995 |

[¶ 20] The 1998 populations of the judicial districts under review were:

| DISTRICT | POPULATION |
|---|---|
| East Central (3 counties) | 127,639 |
| Northeast (11 counties) | 84,011 |
| Northeast Central (2 counties) | 70,585 |
| Northwest (6 counties) | 95,775 |
| South Central (12 counties) | 134,619 |
| Southwest (8 counties) | 39,094 |
| Southeast (11 counties) | 86,521 |

[¶ 21] By comparison with the 1990 population, the 1998 population shows a declining trend in most of the districts under review. The percentages of population change from 1990 to 1998 in the districts under review are:

| DISTRICTS | PERCENTAGES OF POPULATION CHANGE FROM 1990 to 1998 |
|---|---|
| East Cental | +11.9% |
| Northeast | −4.7% |
| Northeast Central | −6.0% |
| Northwest | −2.6% |
| South Central | +2.8% |
| Southwest | −5.1% |
| Southeast | −4.9% |

[¶ 22] Projections indicate the trends will continue. The projected populations of the districts and the anticipated percentages of population change from 1990 to 2015 are:

| DISTRICT | PROJECTED POPULATIONS | ANTICIPATED PERCENTAGES |
|---|---|---|
| East Central | 143,226 | +25.6% |
| Northeast | 80,982 | −8.2% |
| Northeast Central | 67,778 | −9.7% |
| Northwest | 97,506 | −0.9% |
| South Central | 141,020 | +7.7% |
| Southwest | 36,515 | −11.3% |
| Southeast | 82,040 | −9.8% |

[¶ 23] These statistics and projected population trends indicate the Southwest District is, and will continue to be, our least populous judicial district.

[¶ 24] When the population-to-judge/referee ratio is compared among the districts, reduction of a judgeship in the Southwest Judicial District results in a lower population to judge/referee ratio than any other district except the Northeast Central Judicial District.

| DISTRICT | 1998 POPULATION | POPULATION PER JUDGE AND REFEREE (CURRENT) | POPULATION PER JUDGE AND REFEREE WITH ONE JUDGE REDUCED |
|---|---|---|---|
| East Central | 127,639 | 14,182 | 15,955 |
| Northeast | 84,011 | 12,002 | 14,002 |
| Northeast Central | 70,585 | 10,084 | 11,764 |
| Northwest | 95,775 | 11,972 | 13,682 |
| South Central | 134,619 | 14,200 | 15,875 |
| Southwest | 39,094 | 9,774 | 13,031 |
| Southeast | 86,521 | 14,420 | 17,304 |

[¶ 25] The 1998 weighted caseload study, however, indicates the Northeast Central Judicial District has only a +.52 judicial margin based upon current number of judges and referees. The Northeast Central Judicial District has a substantially different population mix and weighted case filings and would be less able to maintain efficient judicial administration with a reduction of judges than would the Southwest Judicial District. As noted in paragraphs 12 and 13 above, the weighted case filings per judicial FTE are substantially higher in the Northeast Central Judicial District than in the Southwest Judicial District, and would remain higher than

would be the filings per judicial FTE in the Southwest Judicial District even after a reduction in judges in the Southwest Judicial District. The Northeast Central Judicial District has a birth rate substantially higher than the Southwest Judicial District. See Table 1. The Northeast Central Judicial District also has a substantially higher crime rate than the Southwest Judicial District as shown by paragraph 36 below. See Table 2. Existing caseloads and populations as well as anticipated trends in population require selection of the Southwest district when compared with the Northeast Central district.

[¶ 26] Although our weighted caseload study compares population to judge and referee availability, a comparison of the population-to-judge ratio without referees is pertinent because some judicial functions are not handled by referees. Such a comparison confirms that a reduction of judgeship in the Southwest District most closely maintains balance among the population-to-judge ratio of the various districts. Based upon 1998 population, the statewide average of population per judge with 43 judges is 14,843. With a reduction of one judgeship, the statewide average population per judge based upon 1998 statistics would be 15,196.

[¶ 27] Comparing the districts for the effect on the population-to-judge ratio of a reduction in judgeship results in the following:

| DISTRICT | 1998 POPULATION | POPULATION PER JUDGE BASED ON CURRENT JUDGESHIPS | POPULATION PER JUDGE WITH ONE JUDGE REDUCED |
|---|---|---|---|
| East Central | 127,639 | 18,234 | 21,273 |
| Northeast | 84,011 | 14,002 | 16,802 |
| Northeast Central | 70,585 | 14,117 | 17,646 |
| Northwest | 95,775 | 13,682 | 15,963 |
| South Central | 134,619 | 16,827 | 19,231 |
| Southwest | 39,094 | 9,774 | 13,031 |
| Southeast | 86,521 | 14,420 | 17,304 |

[¶ 28] Terminating a judgeship in the Southwest District still leaves that district with a lower population-to-judge ratio than any other district.

[¶ 29] Within the Southwest Judicial District, there are three judgeships whose terms expire in December, 2000. Two of the judgeships are chambered in Dickinson and one is chambered in Bowman. Although N.D. Sup.Ct. Admin. R. 7.2 permits this Court to consider the age or possible retirement of the remaining judges in the affected judicial district, none of the judges currently occupying these judgeships is of retirement age and none has expressed an intent to retire without seeking another term. Further, we decline to examine personal differences among our three respected colleagues. Instead our decision is based upon statistics available to the court at the time the decision is required by the legislation. To designate a judgeship for termination within the district the Court has focused on caseloads, population and trends for each in the counties comprising the Southwest Judicial District.

[¶ 30] The weighted caseload study indicates the bulk of the work demanding of judicial time occurs in the northern four counties of the district (Billings, Dunn, Golden Valley and Stark counties). Slightly under 25% of all court filings in the Southwest district occur in the southern four counties of the district (Adams, Bowman, Hettinger and Slope). See Tables 3 and 4. When traffic filings, which are assigned the lowest weight (.35) in our weighted caseload study, are excluded

from the filings, the average filings in those four counties is approximately 21% of the total filings of the district.

[¶ 31] Those filings which demand greater judicial time occur in smaller proportion in the southern four counties than in the northern four counties of the district. The weighted caseload study assigns a weighted load of greater than 1.00 to four types of cases. These case types include felonies, juvenile dependency, juvenile delinquency and administrative appeals. During 1998, greater than 75% of all filings in these categories occurred in the northern half of the district. See Table 3. During 1997, in all of those categories except juvenile dependency, greater than 75% percent of the filings occurred in the northern half of the district. See Table 4.

[¶ 32] When all weighted filings except juvenile dismissals are compared, the following tables indicate the comparisons between the southern four counties and the northern four counties of the district for 1997 and 1998.

| COUNTIES | 1997 | 1998 |
|---|---|---|
| Adams | 15,390 | 13,625 |
| Bowman | 16,151 | 14,927 |
| Hettinger | 8,179 | 6,970 |
| Slope | 2,775 | 2,091 |
| Totals | 42,495(23.75%) | 37,613(21.06%) |
| | | |
| Billings | 3,970 | 3,445 |
| Dunn | 13,987 | 12,572 |
| Golden Valley | 7,644 | 9,069 |
| Stark | 110,871 | 115,870 |
| Totals | 136,422(76.25%) | 140,956(78.94%) |

[¶ 33] Population projections indicate the rate of population decline will most greatly impact the already least populated areas. Within the Southwest District the projected population changes from 1990–2015 are as follows:

| COUNTY | 1990 POPULATION | 1998 POPULATION | 2015 PROJECTED POPULATION | PERCENT CHANGE 1990–2015 |
|---|---|---|---|---|
| Adams | 3,174 | 2,714 | 2,145 | −32.4% |
| Billings | 1,108 | 1,058 | 1,256 | +13.4% |
| Bowman | 3,596 | 3,317 | 2,885 | −19.8% |
| Dunn | 4,005 | 3,560 | 3,058 | −23.6% |
| Golden Valley | 2,108 | 1,876 | 1,662 | −21.2% |
| Hettinger | 3,445 | 2,924 | 2,316 | −32.8% |
| Slope | 907 | 865 | 795 | −12.3% |
| Stark | 22,832 | 22,780 | 22,398 | −1.9% |

[¶ 34] The demand for judicial services will remain most constant in our larger cities. The population demand for judicial services is and will remain in the northern part of the Southwest Judicial District.

[¶ 35] Our review of the reports prepared by the Office of the Attorney General on crime in North Dakota indicates population density correlates to demand for judicial services, particularly in the area of criminal filings.

[¶ 36] The Office of the Attorney General, Bureau of Criminal Investigation, annually publishes a statistical compilation of the crime rate in North Dakota. This report is based upon the reporting of indexed crimes including murder/non-negligent manslaughter, forcible rape, robbery, aggravated assault, burglary, larceny/theft, and motor vehicle theft. The report includes Crime Rates by County based upon reported offenses per 100,000 population. A review of the crime rates by county for the years 1995 through 1998 inclusive, indicates the average rate for the highest reporting county in the state for that four-year period is 5279 reported indexed crimes per 100,000 population. Over this four-year period, Stark County averages 10th among the 53 counties in the reporting of indexed crimes. The average report per 100,000 population for each county of the Southwest Judicial District over the same four-year period is as follows:

| COUNTY | 1995 | 1996 | 1997 | 1998 | AVERAGE PER 100,000 |
|--------|------|------|------|------|---------------------|
| Adams | 1263.1 | 1221.6 | 1046.9 | 877.5 | 1102.28 |
| Billings | 956.5 | 86.6 | —— | —— | 521.55 * |
| Bowman | 858.4 | 549.5 | 889.6 | —— | 765.83 ** |
| Dunn | 260.5 | 129.6 | 156.3 | 27.6 | 143.50 |
| Golden Valley | 1175.9 | 1221.4 | 920.7 | —— | 1106.00 ** |
| Hettinger | 194.8 | 258.5 | 357.3 | 33.9 | 211.13 |
| Slope | 470.0 | 585.5 | 1647.1 | 0 | 675.65 |
| Stark | 2492.8 | 2399.2 | 2532.3 | 2412.5 | 2459.20 |

\* Based on 2 years.  No report filed for 1997 and 1998.

\*\* Based on 3 years.  No report filed in 1998.

---

[¶ 37] We recognize that this order results in all three judges of the Southwest Judicial District being chambered in Dickinson after December 31, 2000.  We assume that by allocating judicial resources where the greater filings exist and where the type of filings demand greater judicial involvement, we will reduce the amount of travel required by judges in the district to serve all areas of the district.  We anticipate efficient service can be provided to the southern four counties by regular scheduling of judicial time in those counties.

[¶ 38] The original legislative intent was to abolish judgeships through attrition rather than by abolition of an occupied judgeship.  This Court's hope had been that the 1999 Legislative Assembly would have seen fit to extend the time to January 1, 2003 to complete the reduction of judgeships.  See Conference Committee's proposed amendment to House Bill 1002.  Given the actuarial statistics relating to our existing judges, reduction to 42 by 2003 solely by attrition would have been virtually assured.  However, no extension was enacted.  Unfortunately, this Court is forced to terminate a judgeship currently occupied by a good jurist and a dedicated public servant.

[¶ 39] On behalf of the citizens of North Dakota, we express our appreciation to the Honorable Zane Anderson who has ably served the judicial needs of North Dakota in District Judgeship No. 5 since 1994 and previously as a county judge of a multi-county district serving Adams, Bowman, Hettinger and Slope counties.

[¶ 40] IT IS HEREBY ORDERED, Judgeship No. 5 with Chambers in Bowman, Southwest Judicial District, is abolished upon the expiration of the current term of Judge Zane Anderson on December 31, 2000.

[¶ 41] The abolition of Judgeship No. 5 is ordered with the intent and confidence that the Honorable Allan L. Schmalenberger, Presiding Judge of the Southwest Judicial District, together with the judges of the district, and their successors, will continue to do their best to provide, through assignment, routine, effective judicial services to the area served by Judgeship No. 5.

[¶ 42] Dated at Bismarck, North Dakota, this 2nd day of December, 1999.

[¶ 43] GERALD W. VANDE WALLE, C.J., CAROL RONNING KAPSNER, DALE V. SANDSTROM, MARY MUEHLEN MARING, JJ., concur.

[¶ 44] NEUMANN, J., dissenting.

[¶ 45] With the greatest respect for my colleagues, who faced grave doubt and difficulty in reaching this decision, I dissent. I would not terminate this judgeship.

[¶ 46] WILLIAM A. NEUMANN

## TABLE 1
## COMPARISON OF BIRTH TO POPULATION RATIOS

| NORTHEAST CENTRAL | 1998 POPULATION | 1998 BIRTHS | BIRTH TO POPULATION RATIO (1998) |
|---|---|---|---|
| Grand Forks | 66,869 | 966 | 01.44% |
| Nelson | 3,716 | 26 | 00.70% |
| District | 70,585 | 992 | 01.41% |

| SOUTHWEST | 1998 POPULATION | 1998 BIRTHS | BIRTH TO POPULATION RATIO (1998) |
|---|---|---|---|
| Adams | 2,714 | 19 | 00.70% |
| Billings | 1,058 | 7 | 00.66% |
| Bowman | 3,317 | 34 | 01.03% |
| Dunn | 3,560 | 24 | 00.67% |
| Golden Valley | 1,876 | 16 | 00.85% |
| Hettinger | 2,924 | 22 | 00.75% |
| Slope | 865 | 10 | 01.16% |
| Stark | 22,780 | 262 | 01.15% |
| District | 39,094 | 394 | 01.01% |

## TABLE 2
## INDEXED CRIME RATE

| YEAR | INDEXED CRIME PER 100,000 POPULATION GRAND FORKS | INDEXED CRIME PER 100,000 POPULATION NELSON |
|---|---|---|
| 1995 | 5385.0 | 535.9 |
| 1996 | 5142.3 | 291.0 |
| 1997 | 4298.0 | No Report |
| 1998 | 4922.1 | No Report |
| Average | 4936.9 | 413.45 * |

* Based on 2 years.

## TABLE 3
## 1998 FILINGS BY COUNTY
## SOUTHWEST JUDICIAL DISTRICT

| COUNTIES | FILINGS (ALL) | FILINGS (WITHOUT TRAFFIC) | FELONIES | JUVENILE DELINQUENCY | JUVENILE DEPENDENCY | ADMIN. APPEALS |
|---|---|---|---|---|---|---|
| Adams | 827 | 332 | 7 | 8 | 0 | 0 |
| Bowman | 533 | 346 | 2 | 10 | 0 | 2 |
| Hettinger | 359 | 155 | 4 | 5 | 0 | 0 |
| Slope | 201 | 53 | 0 | 0 | 0 | 1 |
| TOTALS | 1920(.2459) | 886(.2058) | 13(.1494) | 23(.2233) | 0(.0000) | 3(.1071) |
| Billings | 304 | 91 | 2 | 1 | 0 | 0 |
| Dunn | 807 | 306 | 4 | 6 | 2 | 3 |
| Golden Valley | 344 | 221 | 5 | 10 | 1 | 1 |
| Stark | 4432 | 2801 | 63 | 63 | 16 | 21 |
| TOTALS | 5887(.7541) | 3419(.7942) | 74(.8506) | 80(.7767) | 19(1.0000) | 25(.8929) |

### TABLE 4
### 1997 FILINGS BY COUNTY
### SOUTHWEST JUDICIAL DISTRICT

| COUNTIES | FILINGS (ALL) | FILINGS (WITHOUT TRAFFIC) | FELONIES | JUVENILE DELINQUENCY | JUVENILE DEPENDENCY | ADMIN. APPEALS |
|---|---|---|---|---|---|---|
| Adams | 944 | 347 | 6 | 5 | 5 | 1 |
| Bowman | 651 | 371 | 3 | 5 | 2 | 3 |
| Hettinger | 563 | 175 | 15 | 4 | 0 | 0 |
| Slope | 247 | 61 | 2 | 0 | 1 | 0 |
| TOTALS | 2405(.2451) | 954(.2214) | 26(.2342) | 14(.1944) | 8(.4444) | 4(.1290) |
| | | | | | | |
| Billings | 304 | 97 | 3 | 3 | 0 | 0 |
| Dunn | 1543 | 372 | 9 | 0 | 0 | 2 |
| Golden Valley | 350 | 230 | 3 | 0 | 0 | 0 |
| Stark | 5209 | 2655 | 70 | 55 | 10 | 25 |
| TOTALS | 7406(.7549) | 3354(.7786) | 85(.7658) | 58(.8056) | 10(.5556) | 27(.8710) |