## BRUCE ALTON COOK *v.* STATE OF MARYLAND

[No. 385, September Term, 1976.]

*Decided April 6, 1977.*

The cause was submitted on briefs to THOMPSON, DAVIDSON and MASON, JJ.

Submitted by *Michael E. Marr, Assigned Public Defender,* for appellant.

Submitted by *Francis B. Burch, Attorney General, Arrie W. Davis, Assistant Attorney General, Edwin H. W. Harlan,*

*Jr., State's Attorney for Harford County*, and *John A. Goodman, Assistant State's Attorney for Harford County,* for appellee.

MASON, J., delivered the opinion of the Court.

The appellant, Bruce Alton Cook, was convicted at a bench trial in the Circuit Court for Harford County of robbery with a dangerous and deadly weapon. He was sentenced to a term of fourteen years.

On appeal the appellant contends:

I. That the evidence seized from his apartment should have been suppressed because the warrantless search was illegal.

II. That the evidence seized from his apartment should have been suppressed under the doctrine of res judicata or collateral estoppel.

III. That the appellant was denied due process of law because the trial judge refused to disqualify himself.

I.

According to the evidence adduced, an unnamed informant told a Baltimore City Police officer that Cook and Roger Wolfe were involved in robberies that occurred in Baltimore County on the 8th and 10th of November, 1973. Having previously used the informant in clearing up several other cases, the officer transmitted the information to the Baltimore County Police. They, in turn, obtained search and seizure warrants for Cook's residence on Broening Highway and Wolfe's residence on Bonsal Street in Baltimore City. On November 16, 1973, armed with these warrants, a squad of policemen from Baltimore County and Baltimore City searched both premises, but neither the appellant nor Wolfe was found. Wolfe's parents, however, told Sergeant Zero of the Baltimore County Police that Wolfe was staying at 126 South Chester Street. The police then proceeded to that address, placed Wolfe under arrest and searched the premises. During subsequent interrogation at the police

station, Wolfe admitted his involvement in the robberies and implicated Cook. In addition, Wolfe told the police that Cook also had an apartment at 126 South Chester Street, and that Diane Jorgenson and Roland Bauer, who were involved in the robberies, could probably be found there. Acting on this information and the outstanding arrest warrant for Diane Jorgenson, an escapee from Montrose School for Girls, the police returned to 126 South Chester Street.

The trial judge found the following facts:

> Upon their arrival, Sergeant Zero and a few other officers went to Cook's apartment and knocked on the door. Benjamin Moose opened the door. While the door was open, Sergeant Zero saw a young woman standing in the kitchen who fit the general description of Diane Jorgenson, given in the Montrose report. Moose then tried to close the door but was prevented from doing so when an officer put his foot in the doorway. Sergeant Zero and other officers then entered the apartment and Sergeant Zero went directly to the young woman while other officers began to check the other rooms for other persons. In the course of checking the rooms, various items of evidence relevant to this proceeding were found, including two guns, a quantity of jewelry and Defendant Cook's wallet. According to the testimony, all items were out in open areas and no probing was necessary to find them other than the checking of rooms for other persons. All items seen were pointed out to the Baltimore City officers present and were then seized by them. Defendant Bauer was present at the time and was taken into custody. Defendant Cook was also then present but escaped before his identity was known to the officers.

The trial judge ruled the entry into Cook's apartment and the seizure of the stolen property were valid because they were based on an arrest warrant for Diane Jorgenson,

probable cause, exigent circumstances, and the plain view doctrine. We agree.

In the case of *Nilson v. State,* 272 Md. 179, 321 A. 2d 301 (1974), the Court of Appeals similarly held that a warrantless entry into an apartment and seizure of stolen property were legal because of probable cause, exigent circumstances and the plain view doctrine. In that case a building and loan association was held up at gunpoint by three men wearing ski masks around 9:40 a.m. The police were given a description of the robbers and of the getaway car. Shortly before 11:00 a.m. the police located the abandoned vehicle. A search of the car uncovered a dry cleaning ticket in the name of "McCoy" with an address listed at "2458 Callow". This information was immediately broadcast and a large contigent of police and FBI agents converged on the three-story, multiple dwelling apartment house at that address. Police investigation of the apartment building revealed that three men lived in apartment 12 on the third floor; that they left the apartment at 8:00 a.m. and returned between 11:00 and 11:30 a.m. At 12:45 p.m. the police proceeded to apartment 12 to arrest McCoy or any other person who fit the description of the robbers. The police knocked on the door but were refused admittance without a search warrant. Upon observing that the man who opened the door resembled one of the suspects and on hearing noises from the back room, the police pushed open the door and arrested the occupants of the apartment, all of whom fitted the general descriptions of the suspects. The police also seized a carbine rifle seen in an open cupboard approximately four feet from the men and a shotgun sticking out of a plaid clothing bag in the rear bedroom that was visible from the middle bedroom.

Like the appellant here, *Nilson* argued that the warrantless entry and search of the apartment were illegal due to the lack of probable cause and exigent circumstances.

As to probable cause, the Court of Appeals said:

> . . . that at the time the police entered apartment 12, they had probable cause to believe that the

robbery had been committed by persons then located on the premises. Indeed, as the evidence so dramatically reveals, within minutes after the crime was committed, the police were closely monitoring the movements of the suspected felons and the information which they received led unmistakably to the apartment house at Callow Avenue, and particularly to apartment 12. The police had general descriptions of the three robbers. They knew that at least three men were then in apartment 12 — the same three that earlier that morning had driven off in the white Peugeot, a vehicle previously identified as having been used by the robbers. That one of the robbers was named McCoy was deemed likely because a ticket bearing his name and his Callow Avenue address was found in the stolen Pontiac which was used as the getaway car. Sergeant Shriner's observation upon requesting entry to apartment 12 that Campbell fit the general description of one of the robbers added materially to the probable cause then possessed by the police. *Id.* at 184-85.

As to exigent circumstances to justify a warrantless entry into a house to arrest a suspected felon, the *Nilson* Court cited with approval *Warden v. Hayden*, 387 U. S. 294, 87 S. Ct. 1642, 18 L.Ed.2d 782 (1967); *Dorman v. United States*, 435 F. 2d 385 (D.C. Cir. 1970); *United States v. Harris*, 435 F. 2d 74, (D.C. Cir. 1970) and enumerated the considerations material to assessing the existence of exigent circumstances as set forth in *Dorman, supra.*

First, that a grave offense is involved, particularly one that is a crime of violence. *See,* e.g. *Warden v. Hayden, supra; McDonald v. United States,* 335 U.S. 451, 459, 69 S.Ct. 191, 93 L.Ed. 153 (1948) (concurring opinion Justice Jackson). Contrariwise the restrictive requirement for a warrant is more likely to be retained, and the need for proceeding without a warrant found lacking,

when the offense is what has been sometimes referred to as one of the "complacent" crimes, like gambling.

Second, and obviously inter-related, that the suspect is reasonably believed to be armed. Delay in arrest of an armed felon may well increase danger in the community meanwhile, or to the officers at time of arrest. This consideration bears materially on the justification for a warrantless entry.

Third, that there exists not merely the minimum of probable cause, that is requisite even when a warrant has been issued, but beyond that a clear showing of probable cause, including "reasonably trustworthy information," to believe that the suspect committed the crime involved.

Fourth, strong reason to believe that the suspect is in the premises being entered.

Fifth, a likelihood that the suspect will escape if not swiftly apprehended.

Sixth, the circumstance that the entry, though not consented, is made peaceably. Forcible entry may in some instances be justified. But the fact that entry was not forcible aids in showing reasonableness of police attitude and conduct. The police, by identifying their mission, give the person an opportunity to surrender himself without a struggle and thus to avoid the invasion of privacy involved in entry into the home. 435 F. 2d at 392-93. *Id.* at 188-89.

The *Nilson* Court further stated:

In the present case, contrary to appellants' contention, the primary mission of the officers in entering the apartment was to arrest the robbers; the arrests were not a mere pretext to conduct a warrantless search of the premises for the fruits and instrumentalities of the crime. Assuming that exigent circumstances are constitutionally

> prerequisite to a forcible entry into a dwelling by police to make a warrantless arrest upon probable cause, we think that the evidence in this case, as heretofore related, plainly demonstrates the existence of such circumstances consistent with the principles outlined in the cited cases. That the police waited for well over an hour before attempting to enter the apartment does not compel the conclusion that the circumstances underlying their warrantless entry were not exigent. *Id.* at 190-91.

In this case, the police had an outstanding warrant for the arrest of Diane Jorgenson and reasonable grounds to believe that she was in Cook's apartment. These facts, without more, would justify the entry into the apartment to arrest Jorgenson. Once lawfully in the apartment, the police could validly seize the two guns which they, without probing, inadvertently observed in plain view. *See Graham v. State,* 6 Md. App. 458, 251 A. 2d 616 (1968); *Hebron v. State,* 13 Md. App. 134, 281 A. 2d 547 (1971). Thus the validity of the entry and the admissibility of the evidence are unassailable.

Moreover, in addition to the arrest warrant for Jorgenson, virtually all of the factors deemed important in *Dorman* to establish exigent circumstances are present in this case. The offenses in question were crimes of violence, i.e., robberies. The police knew that weapons were used and stolen in the perpetration of these crimes and that the suspected felons were armed. In addition there was a clear showing of probable cause and a strong reason to believe that Cook, Bauer and Jorgenson had committed the crimes and were in Cook's apartment. There was also the likelihood that Jorgenson and Bauer, who did not live at this apartment, would be gone if not swiftly apprehended. In fact, Jorgenson left before the police arrived, and Cook escaped after they arrived. Moreover, the police did not learn of the whereabouts of the suspected felons until approximately 8 P.M. or 9 P.M., whereupon they immediately proceeded to the apartment.

In *Dorman v. United States*, 435 F. 2d 385, 388-390 (D.C. Cir. 1970), the court stated:

> ... the general requirement of a warrant as a condition for entry into a house is subject to an exception where the entry is for the purpose of making an arrest of a suspected felon. ..., the requirement of a warrant may be excused, where circumstances do not tolerate delay, like that incident to obtaining a warrant, of an officer making an arrest.

Under the particular facts in this case, we conclude that the entry into the apartment was not only valid under the outstanding arrest warrant for Jorgenson, but the entry for the purpose of apprehending Cook and Bauer was also reasonable and lawful because of exigent circumstances.

## II.

As to the appellant's second contention, the record discloses that Cook and other co-defendants were brought to trial in Baltimore County in June of 1974 for various robberies committed in that county. Cook moved to suppress the evidence seized from his apartment on November 16, 1973 on the grounds that the warrantless search of the premises was illegal. The trial judge, after hearing the evidence, granted the motion.

> Gentlemen, without belaboring this matter any further, I am obligated as I see the law, to sustain the objection and to exclude from the evidence any material which was seized as a result of this entry into the apartment on Chester Street, 126 S. Chester Street.

Following this, the court granted Cook's motion for a mistrial.[1]

In September of 1974, Cook and another co-defendant

---

1. The record before us fails to disclose the reason for the mistrial.

were brought to trial in Harford County for a robbery committed in that county. Introduced into evidence, over Cook's objection, were two pistols seized in the November 16, 1973 search of his apartment.

The appellant contends that this evidence should have been suppressed on the doctrine of res judicata or collateral estoppel because the trial judge in Baltimore County had suppressed all the evidence seized on the grounds that the entry and search of his apartment were illegal.

In *MPC, Inc. v. Kenny*, 279 Md. 29, 367 A. 2d 486 (1977), the Court of Appeals said:

> The delineation between res judicata and collateral estoppel was expressed in *Sterling v. Local 438*, 207 Md. 132, 140-41, 113 A. 2d 389, 393, *cert. denied*, 350 U. S. 875, 76 S. Ct. 119, 100 L. Ed. 773 (1955):
>
>> ". . . If the second suit is between the same parties and is upon the *same cause of action*, a *judgment in the earlier case on the merits* is an absolute bar, not only as to all matters which were litigated in the earlier case, but as to all matters which could have been litigated [res judicata]. If, in a second suit between the *same parties*, even though the cause of action is different, *any determination of fact, which was actually litigated in the first case*, is conclusive in the second case [collateral estoppel]." (citation omitted). (emphasis supplied).

In order for the doctrine of res judicata to apply in the present case, we must answer in the affirmative the following questions: (1) Were the parties the same in both cases? (2) Were the causes of action the same in both cases? (3) Was there a final judgment on the merits in the first case?

As to the first question, it is evident that the parties in both cases were the same, i.e., *State of Maryland v. Bruce*

*Alton Cook*. With respect to the second question, the test for determining whether the causes of action are the same was stated by Judge Levine in *MPC, Inc. v. Kenny, supra.*

> Courts elsewhere have applied a variety of tests in determining whether two causes of action are the same for purposes of invoking res judicata. The measure which seems to find favor with most courts and the one which we have applied, is whether the same evidentiary facts would sustain both actions. (citations omitted). *Id.* at 489.

In applying the "same evidence test" as enunciated above, it is clear that the two cases involved completely different causes of action. In the first case, Cook was charged with committing certain robberies and related crimes in Baltimore County; whereas, in the second case, he was charged with committing a robbery in Harford County. These crimes were chronologically discrete, involving different jurisdictions, different charging documents, and different evidentiary facts. Regarding the third question, there was no final judgment on the merits since the first case ended in a mistrial. It follows, from the views we have expressed, the doctrine of res judicata does not apply.

Turning to the doctrine of collateral estoppel, the Supreme Court stated in *Ashe v. Swenson*, 397 U. S. 436, 443, 90 S. Ct. 1189, 25 L.Ed.2d 469 (1970):

> "Collateral estoppel" is an awkward phrase, but it stands for an extremely important principle in our adversary system of justice. It means simply that when an issue of ultimate fact has been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future law suit.

As we view it, the pivotal question for purposes of collateral estoppel is whether in the first case an issue of ultimate fact was determined by a valid and final judgment. The case of *Stevens v. State*, 34 Md. App. 164, 366 A. 2d 414 (1976) is instructive on this point. In that case the defendant

was charged in the District Court of Maryland for Prince George's County with receiving stolen goods taken in a burglary from an apartment in Montgomery County. Apparently, as a result of plea bargaining, the defendant was placed on probation without verdict. Subsequently, the defendant was charged with common law burglary and related counts in Montgomery County. He filed a motion to dismiss this indictment on the grounds of double jeopardy, res judicata and collateral estoppel, which was denied.

On appeal this Court reasoned that jeopardy had attached in the proceeding in the district court for receiving stolen goods and that the right against double jeopardy barred the Montgomery County prosecution of the receiving stolen goods and larceny counts in the indictment. The case was remanded for trial on the counts which were not barred from prosecution. The defendant was brought to trial on the remaining counts and was convicted of breaking and entering.

On his second appeal to this Court, he contended that the conviction for breaking and entering was barred by the doctrine of collateral estoppel. This Court ruled that probation without verdict was not a valid and final factual judgment and that the doctrine of collateral estoppel would not bar the conviction. We observed that where probation without verdict is revoked "the case reverts to its pre-probationary status, which in terms of ultimate factual determinations is zero." *Id.* at 170.

Likewise, if probation without verdict does not establish that an issue of ultimate fact has been determined by a valid and final judgment neither does a mistrial such as we have here.

In the present case, it is manifest that the declaration of a mistrial extinguished the trial court's findings of fact and his ruling on the admissibility of the evidence at the suppression hearing. Therefore, an issue of ultimate fact, upon which the doctrine of collateral estoppel is predicated, has not been determined by a valid and final judgment. Moreover, it has long been settled that under such

circumstances, the appellant is not exempt from being retried any more than when a jury is unable to agree on a verdict, a motion for a new trial is granted, or a conviction is reversed on appeal. *See Neal v. State,* 272 Md. 323, 322 A. 2d 887 (1974).

### III.

The final argument of the appellant that he was denied due process of law because the trial judge refused to disqualify himself is without merit and can be disposed of briefly.

The record shows that the appellant joined in a motion with co-defendant Bauer for disqualification of the trial judge because the victim's wife was the manager of the trial judge's election campaign. The trial judge indicated that the victim's wife managed his campaign for approximately two weeks, but ceased any real activity thereafter because of illness. He further indicated that he did not know the victim's wife prior to the campaign and had not seen her since the election.

Under the circumstances here there was no constitutional, statutory, or practical need for the trial judge to disqualify himself. *See Ex parte Bowles,* 164 Md. 318, 165 A. 169 (1933). Moreover, there was no showing of bias, prejudice or lack of impartiality on the part of the judge.

*Judgment affirmed.*
*Costs to be paid by appellant.*