2004 ND 64

**In the Matter of the APPLICATION OF Rebecca GRAVES FOR ADMISSION TO the BAR OF the STATE of North Dakota**

**Rebecca C. Graves, Petitioner**

v.

**State Board of Law Examiners, Respondent.**

**No. 20030137.**

Supreme Court of North Dakota.

March 26, 2004.

Janel C. Wallace (argued), Bemidji, MN and Maury Cameron Thompson (appeared), Bismarck, N.D., for petitioner. Rebecca C. Graves, pro se (on brief), Grand Forks, N.D.

David S. Maring, Bismarck, N.D., for respondent.

PER CURIAM.

[¶ 1]   Rebecca Graves requested review of the recommendation of the State Board of Law Examiners ("the Board") that she be conditionally admitted to the bar.  We conclude the chairperson of the Board had an undisclosed potential conflict of interest, and we therefore reject the Board's recommendation of conditional admission and remand for a new hearing before a different hearing panel.

I

[¶ 2]   Graves submitted a petition for admission to the bar and passed the July

2002 bar examination. In September 2002 she was advised the Board was conducting a further character investigation. Graves appeared at an informal interview before the Board on November 15, 2002. The Board's questioning focused upon Graves's involvement in her stepfather's beekeeping business, particularly prior litigation concerning land that had been placed in Graves's name and had been used in her stepfather's business. *See Valley Honey Co. v. Graves*, 2003 ND 125, 666 N.W.2d 453; *Questa Res., Inc. v. Stott*, 2003 ND 51, 658 N.W.2d 756. On December 13, 2002, the Board notified Graves it was recommending she be conditionally admitted to the bar under Admission to Practice R. 8 for a period of eighteen months. Included in the conditions for admission were appointment of a mentor and prohibition of Graves's practicing as a solo practitioner.

[¶ 3] Graves requested a formal hearing, which was held before the three members of the Board on March 17, 2003. The Board subsequently notified Graves it would adhere to its prior recommendation for conditional admission and directed the Board's attorney to prepare proposed findings of fact and conclusions of law.

[¶ 4] Subsequent to the hearing, but prior to issuance of the Board's final findings, conclusions, and recommendation, Graves learned that Board chairperson Rebecca Thiem was married to Glenn Smith, a beekeeper who had had prior acrimonious business dealings with Graves's stepfather, Harold Knoefler. In 1995, Smith had leased bees from Knoefler, and they allegedly had a dispute over an agreement to share the crop, with Knoefler claiming Smith never paid him for his share of the honey. Knoefler also had a dispute with Smith and his brother, Wayne Smith, who is also a beekeeper, over ownership of numerous barrels. There was also an allegation of disputes between Knoefler and Glenn Smith over the right to use certain bee yards in recent years. The Board also noted in its brief on appeal that Knoefler sued Wayne Smith in 1997. Throughout the course of the admission proceedings, Thiem never notified the parties or counsel about her husband's and brother-in-law's adverse relationship with Graves's stepfather.

[¶ 5] Upon learning of this potential conflict of interest, Graves sent a letter to the Board, requesting disqualification of the members of the Board. The Board denied Graves's request for disqualification and issued its recommendation that Graves be conditionally admitted to the bar. Graves has requested review of that recommendation.

[¶ 6] This Court has jurisdiction under N.D. Const. art. VI, § 3, N.D.C.C. § 27–11–02, and Admission to Practice R. 9(c).

II

[¶ 7] Graves contends Thiem should have disqualified herself because of her potential conflict of interest.

[¶ 8] The due process clause requires that the Board " 'employ fair procedures in processing applications for admission to the bar.' " *In re Lamb*, 539 N.W.2d 865, 867 (N.D.1995) (quoting *Whitfield v. Illinois Bd. of Law Exam'rs*, 504 F.2d 474, 478 (7th Cir.1974)). A fair and impartial tribunal is a basic tenet of due process, and this requirement applies to administrative adjudications as well as judicial proceedings. *Municipal Servs. Corp. v. State*, 483 N.W.2d 560, 562 (N.D. 1992).

[¶ 9] The rules governing admission to practice contemplate disqualification of members of the Board for conflicts of interest:

Upon the disqualification of a member of the Board from consideration of an

application for admission or relicensure, the Supreme Court may, at the request of the Board, appoint a resident licensed member of the bar, including a former member of the Board, to serve temporarily in the disqualified member's place. Admission to Practice R. 14.

[¶ 10] Although the rules on admission do not delineate guidelines for disqualification of Board members, we may look to statutes and rules governing recusal of members of other tribunals to outline the contours of appropriate conduct. For example, hearing officers in administrative proceedings must be impartial and unbiased. Under N.D.C.C. § 54–57–01(3), an administrative law judge "must be free of any association that would impair the person's ability to function officially in a fair and objective manner." The Administrative Agencies Practice Act provides procedures for disqualification of a hearing officer. *See* N.D.C.C. §§ 28–32–27 and 28–32–38; *Elter v. North Dakota Workers Comp. Bureau*, 1999 ND 179, ¶¶ 27–28, 599 N.W.2d 315.

[¶ 11] The Code of Judicial Conduct also provides relevant guidelines for disqualification. Canon 3(E)(1)(a) of the Code of Judicial Conduct requires that a judge "shall disqualify himself or herself in a proceeding in which the judge's impartiality might reasonably be questioned, including but not limited to instances where . . . the judge has a personal bias or prejudice concerning a party . . . or personal knowledge of disputed evidentiary facts concerning the proceedings." The Commentary to that rule states, "a judge is disqualified whenever the judge's impartiality might reasonably be questioned, regardless whether any of the specific rules in Section 3E(1) apply." The Commentary further provides that "[a] judge should disclose on the record information that the judge believes the parties or their lawyers

might consider relevant to the question of disqualification, even if the judge believes there is no real basis for disqualification."

[¶ 12] These rules on disqualification must also be viewed within the context of Canon 2, which requires that a judge shall avoid impropriety and the appearance of impropriety. Canon 2(A) of the Code of Judicial Conduct specifies that a judge "shall act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary." The Commentary to Canon 2(A) clarifies that "[t]he test for appearance of impropriety is whether the conduct would create in reasonable minds a perception that the judge's ability to carry out judicial responsibilities with integrity, impartiality and competence is impaired."

[¶ 13] The American Bar Association, the National Conference of Bar Examiners, and the Association of American Law Schools have adopted a Code of Recommended Standards for Bar Examiners which similarly directs that a Board member should not have an adverse interest in a case and that there should be no suspicion that the member's judgment might be influenced by improper considerations:

> Conflicts of Interest. A bar examiner should not have adverse interests, conflicting duties or inconsistent obligations that will in any way interfere or appear to interfere with the proper administration of the examiner's functions. . . . The conduct of a bar examiner should be such that there may be no suspicion that the examiner's judgment may be swayed by improper considerations.

National Conference of Bar Examiners and American Bar Association Section of Legal Education and Admissions to the Bar, Comprehensive Guide to Bar Admission Requirements: Code of Recommended Standards for Bar Examiners § I(3) (2004).

[¶ 14] This Court has addressed a judge's duty to disqualify himself or herself to satisfy the appearance of justice:

> The disqualification directions in Rule 3(C) are not merely guidelines; they are mandatory. Our primary concern is the preservation of public respect and confidence in the integrity of the judicial system, which "can only be maintained if justice satisfies the appearance of justice." *Baier v. Hampton*, 440 N.W.2d 712, 715 (N.D.1989). Even without intentional bias, disqualification can be essential to satisfy the appearance of justice. *Id.*

*Sargent County Bank v. Wentworth*, 500 N.W.2d 862, 877–78 (N.D.1993) (citation omitted). The Court further concluded, reversal of a judgment may be necessary when the judge's impartiality might be questioned:

> A violation of the Rules of Judicial Conduct by the judge who presides over a case can result in the reversal of a judgment. This can occur even when the judge has no actual knowledge of, or inadvertently overlooks, a disqualifying circumstance. Judge Eckert's conduct did not show any intentionally unethical behavior, nor can any be implied in view of the frivolity of the *Williams*[*v. State*, 405 N.W.2d 615 (N.D. 1987)] litigation. Rather, the record shows beyond question that Judge Eckert fairly tried this case. Nevertheless, the appearance of impropriety is so important to our judicial system that, in the interests of justice, reversal of a judgment may be required even without any intentional bias or impropriety.

*Sargent County Bank*, at 879–80 (citations omitted).

■ [¶ 15] In this case, Graves learned after the hearing that Thiem's husband, Glenn Smith, was a direct competitor of her stepfather, Harold Knoefler, in the beekeeping business and that Knoefler and Glenn Smith had had acrimonious business dealings in the past regarding payment for honey, ownership of barrels, and use of particular bee yards. In addition, Knoefler had sued Wayne Smith, Thiem's brother-in-law, over business dealings. Thiem did not at any time disclose these potential conflicts to Graves or her counsel. In addition, there are at least two instances in the record when Thiem made comments suggesting she had personal knowledge of Knoefler and of the Knoefler family's legal and financial problems.

[¶ 16] Thiem's failure to disclose her husband's and brother-in-law's business dealings with Knoefler are particularly troublesome when the character investigation of Graves was entirely focused upon her involvement in her stepfather's beekeeping business and resulting litigation. This is not a case in which the potential conflict of interest is wholly unrelated to the factual and legal issues before the tribunal. Rather, the sole issue raised by the Board as a basis for recommending conditional admission was Graves's involvement in Knoefler's beekeeping business and her conduct regarding certain business property that had been deeded to her.

[¶ 17] Under these circumstances, we conclude disqualification is necessary and a remand for a new hearing before a different hearing panel is required in the interest of justice. Although the record does not demonstrate intentional unethical behavior, on the facts presented, Thiem's impartiality might reasonably be questioned, and reasonable minds might find an appearance of impropriety.

■ [¶ 18] Counsel for the Board argues that even if there was a potential conflict of interest, Graves did not raise it in a timely fashion at the hearing and she

should not have been permitted to raise the issue after the Board had advised her it was adhering to its prior recommendation. Graves claims, however, that she did not learn of the potential conflict until after the hearing and that she raised the issue as soon as she learned of the conflict. There is no evidence Graves knew of the conflict at the time of the hearing. Thiem and her husband have different last names, so Graves would not have been alerted to the connection between her stepfather and Thiem's husband. Furthermore, Thiem was in a position to have superior knowledge of the relationship between her husband and Knoefler, and her comments at the hearing suggest she was aware of Knoefler and the Knoefler family's past legal and financial difficulties. The Code of Judicial Conduct places the responsibility upon a judge, and by extension in this case a Board member considering an application for admission, to "disclose on the record information that the judge believes the parties or their lawyers might consider relevant to the question of disqualification, even if the judge believes there is no real basis for disqualification." N.D.Code Jud. Conduct Canon 3(E)(1), Commentary.

Thiem should have disclosed her husband's and brother-in-law's relationship with Graves's stepfather at the hearing, and Graves's motion to disqualify the members of the Board was not untimely.

### III

[¶ 19] We reject the Board's recommendation for conditional admission and remand for a new hearing before a different hearing panel appointed by this Court under Admission to Practice R. 14.

[¶ 20] GERALD W. VANDE WALLE, C.J., GORDON O. HOBERG, S.J., DALE V. SANDSTROM, WILLIAM A. NEUMANN and CAROL RONNING KAPSNER, JJ., concur.

[¶ 21] The Honorable GORDON O. HOBERG, Surrogate Judge, sitting in place of MARING, J., disqualified.